**Gracie I. HAMMONS, Administratrix of the Estate of William Troy Hammons, Deceased, Appellant,**

**v.**

**MUSKOGEE MEDICAL CENTER AUTHORITY d/b/a Muskogee General Hospital, a Public Trust, Appellee.**

No. 59794.

Supreme Court of Oklahoma.

March 19, 1985.

---

Kennedy, Kennedy, Wright & Stout by Weldon Stout, Muskogee, for appellant.

Studney & Barkley by Mike Barkley, and Dan W. Ernst, Tulsa, for appellee.

KAUGER, Justice.

The dispositive issue presented is whether a 1979 amendment of the Political Subdi-vision Tort Claims Act (Act) should be given retrospective effect thereby barring the claimant's action for wrongful death. The trial court held that the amendment operated retroactively, that the notice of claim requirement and the time-bar limitation of 51 O.S.1981 § 156 were applicable, and entered summary judgment against the claimant. We find that because a substantive right was involved, the trial court erred in retroactive application of the statute.

On October 26, 1978, William Troy Hammons, (patient) the husband of Gracie I. Hammons, (appellant/widow), entered the Muskogee General Hospital, appellee/hospital, for surgery. He underwent a craniectomy for removal of a subdural hematoma. After surgery, he was placed in the intensive care ward. On October 29, 1978, Mrs. Hammons found her husband with his head wedged between the foot of the bed and the bed rail. Several corrective operations were performed to correct the damage, but the surgeries were unsuccessful, and the patient died on December 21, 1978. On December 17, 1980, the widow filed suit against Muskogee Medical Center Authority, d/b/a Muskogee General Hospital, (appellee). She alleged that the hospital was negligent in its medical care and treatment of her deceased husband. The hospital answered, denied the allegations of negligence, and filed a motion for summary judgment alleging lack of jurisdiction based on failure to give notice in compliance with the statute of limitations contained in 51 O.S.1981 § 156. The motion was sustained, and the widow has appealed timely.

**THE 1979 AMENDMENT OF THE POLITICAL SUBDIVISION TORT CLAIMS ACT WHICH REDEFINED THE TERM "POLITICAL SUBDIVISION" DOES NOT BAR A WRONGFUL DEATH ACTION WHICH AROSE PRIOR TO AMENDMENT.**

The Political Subdivision Tort Claims Act was adopted by our legislature as a conditional encroachment into the doctrine of sovereign immunity. It allows persons

with claims against political entities to sue for redress after notice, and within prescribed time frames.[1] At the time of decedent's death in 1978, the Act provided certain definitions. One term legislatively defined in the act was "political subdivision".[2] The Act stated that for the purposes of the Act, a political subdivision is an incorporated city or town, a school district or a county and all of their institutions, instrumentalities or *agencies*. The Legislature defined "agency" as including "any Board, Commission, Committee, Department, or other instrumentality or entity designated to act in behalf of a political subdivision." Effective July 1, 1979, the definition of "political subdivision" was amended providing that the term political subdivision also means a public trust where a city, town, school district, or county is a named beneficiary.[3]

In support of her request for reversal, the appellant contends that her cause of

---

1. Notice requirements and time limitations are provided in 51 O.S.1981 § 156:

   "A. Any person having a claim against a political subdivision or an employee within the scope of this act shall petition the political subdivision for any appropriate relief including the award of money damages.
   B. A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after the loss occurs.
   C. The written notice of claim shall state the time, place and circumstances of the claim and the amount of compensation or other relief demanded. Failure to state either the time, place, circumstances and amount of compensation demanded shall not invalidate the notice unless the claimant declines or refuses to furnish such information within ninety (90) days after demand by the political subdivision. No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within six (6) months after notification of denial of the claim by the clerk of the political subdivision. The time for giving written notice of claim does not include the time during which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity.
   D. When the claim is one for death by wrongful act or omission, notice may be presented by the personal representative, surviving spouse or next of kin or other legal representative or the consular officer of a foreign country of which the deceased was a citizen, within one (1) year after the alleged injury or loss resulting in such death. Provided, however, if the person for whose death the claim is made has presented notice that would have been sufficient had he lived, an action for wrongful death may be brought without any additional notice."

2. In 1978 the Act, 51 O.S.1978 Supp. § 152, provided:

   "§ 152. Definitions—As used in this act:

   1. 'Agency' means any board, commission, committee, department or other instrumentality or entity designated to act in behalf of a political subdivision.
   2. 'Employee' means any person who is acting or who has acted in behalf of a political subdivision or an agency whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis. Employee also includes all elected or appointed officers, members of governing bodies and other persons designated to set for an agency or political subdivision, but shall not include independent contractors.
   3. 'Loss' means injury or death of a person or damage to real or personal property.
   4. 'Municipality' means any incorporated city or town, and all institutions, agencies or instrumentalities of a municipality.
   5. 'Scope of employment' means an employee was acting in the performance of the duties of the office or employment or was performing tasks lawfully assigned by a competent authority.
   6. 'Political subdivision' means either an incorporated city or town, a school district or a county and all their institutions, instrumentalities or agencies."

3. The 1979 amendment, 51 O.S.1979 Supp. § 152(6), in which definitions are contained, provides:

   "6. 'Political subdivision' means:
   a. a municipality;
   b. a school district;
   c. a county; or
   d. a public trust where a city, town, school district or county is a beneficiary; and all their institutions, instrumentalities or agencies."

   Section 152(6)(d) was amended May, 1984, effective 12:01 a.m. October 1, 1985 to provide:

   "8. 'Political subdivision' means:
   a. a municipality;
   b. a school district;
   c. a county;
   d. a public trust where a city, town, school district or county is a beneficiary, *provided, that for the purpose of this act, a public trust shall not include any hospital operating under*

action accrued on the date of her husband's death, December 21, 1978, and that on that date the hospital was not included within the Act. The trial court based its ruling on the appellee's motion for summary judgment on a finding that the hospital was operating under a public trust authority, and that, therefore, the notice requirement of 51 O.S.1981 § 156(D) was applicable.[4]

At the time of the patient's death, a political subdivision within 51 O.S.1978 Supp. § 152(6) was either an incorporated city or town, a school district or county, and all their institutions, instrumentalities or agencies. A public trust which named a city, town, school district or county as beneficiary was not a political subdivision by statutory definition. The hospital filed an affidavit by its Administrator who testified that the hospital was a public trust, and that the City of Muskogee, Oklahoma, was its sole beneficiary. Attached to the affidavit was the trust indenture. Upon this uncontroverted evidence the trial court applied the 1979 amendment, found that the hospital was a political subdivision, and held that the action was filed untimely.

■■■ Prior to the 1979 legislative amendment, a municipal hospital which operated under a public trust authority, and not as an agent of a municipality, could not avail itself of the statutorily limited doctrine of sovereign immunity.[5] As a general rule, a statute or its amendments will have only prospective effect unless it clearly provides otherwise.[6] The revision of the statute to include the hospital within its protection was not a mere procedural provision. At issue is the widow's substantive right to bring an action against the hospital.

■■■ Article 5 § 54 of the Oklahoma Constitution precludes the application of the Political Subdivision Tort Claims Act to the facts in this case. The Constitution provides that the repeal of a statute shall not affect any accrued right.[7] The accrual of a cause of action means the right to institute and maintain a suit. The proper test is to ascertain when the widow could first have maintained her action. The Constitution prohibits legislative disturbance of the existence of a cause of action from and after its inception. A person's failure to exercise a right statutorily provided therein, before the repeal or amendment of the statute, in no way affects or lessens the right.[8] To apply the amendment retrospectively, would in effect abrogate the widow's cause of action for wrongful death and violate art. 23 § 7 [9] which forbids elimination of the right to recover damages for injuries resulting in death. The trial court erred when it applied the 1979 statutory definition of the term political subdivision to a cause of action which accrued prior to the amendment.[10]

a *trust authority*, and all their institutions, instrumentalities or agencies."
The basis for the summary judgment was the hospital's status as a public trust that named the City of Muskogee as its beneficiary.

4. See note 1, supra.

5. *Hershel v. University Hospital Foundation,* 610 P.2d 237, 239 (Okla.1980); *City of Shawnee v. Roush,* 101 Okla. 60, 223 P. 354–55 (1924).

6. *Hiskett v. Wells,* 351 P.2d 300, 303 (Okla.1959).

7. The Okla. Const. art. 5 § 54 states:
"The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute."

8. *Cowart v. Piper Aircraft Corp.,* 665 P.2d 315, 318 (Okla.1983); *Mid-Continent Cas. Co. v. P. &*

*H. Supply Inc.,* 490 P.2d 1358, 1361, 72 A.L.R.3d 1234 (Okla.1971); *Security Bank & Trust Co. v. Barnett,* 169 Okla. 298, 36 P.2d 874, 880 (1934).

9. The Okla. Const. art. 23 § 7 precludes a contra result. It provides:
"The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, provided however, that the Legislature may provide an amount of compensation under the Workmens' Compensation Law for death resulting from injuries suffered in employment covered by such law, in which case the compensation so provided shall be exclusive."

10. The 1978 definition of political subdivision in 51 O.S.1978 Supp. § 152(6) did not include public trust. It was amended in 1979. The amendment is in effect a repealer because it supersedes the pre-existing law. *Baum v. Oklahoma City,* 190 Okla. 618, 126 P.2d 249, 251 (1942).

The question of agency was not addressed in the order of summary judgment, nor do we make any determination today of that issue. The hospital has consistently argued, that from its inception, it was an agency of the City of Muskogee and acquired subsequently the status of a public trust. On remand, the question of agency should be resolved based on the relationship between the municipality and the hospital on the date of death of the patient. The initial question the trial court will confront is whether the hospital qualifies as an agency of Muskogee, Oklahoma. If the hospital is an agency of the municipality, the provisions of the Political Subdivision Tort Claims Act are applicable. If not, the controlling statute of limitations is the statute which governs wrongful death actions, 12 O.S.1981 § 1053(A).[11]

REVERSED AND REMANDED.

DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, WILSON, JJ., concur.

SIMMS, C.J., concurs in result.

SUMMERS, J., disqualified.

---

**11.** The general statute of limitations for wrongful death actions, 12 O.S.1981 § 1053(A), provides:

"A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action, had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two (2) years."