Jose Olvera CHAIREZ,
Plaintiff-Appellee,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE; William Duckham; Ronald Dowdy; Robert McNamara; and Jerald D. Jondall, Defendants-Appellants.

No. 84–1729.

United States Court of Appeals,
Sixth Circuit.

Argued March 7, 1986.

Decided May 16, 1986.

John A. Smietanka, U.S. Atty., Anne Vandermale Tuuk, Asst. U.S. Atty., Grand Rapids, Mich., Ward S. Hamlin, Paw Paw, Mich., Katherine Gruenheck (argued), Dept. of Justice/Civil Div., Washington, D.C., for defendants-appellants.

Scott Stensaas, Berrien Springs, Gary N. Gershon (argued), Grand Rapids, Mich., for plaintiff-appellee.

Before CONTIE and RYAN, Circuit Judges and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff-appellee Jose Olvera Chairez (Chairez) sued the Immigration and Naturalization Service (INS) and several state and federal individual defendants in the district court for the Western District of Michigan. Chairez requested declaratory, injunctive and monetary relief for alleged violations of statutory and constitutional rights, arising out of his forty-six hour detention in the Van Buren County jail. A number of counts were dismissed voluntarily, and eventually the district court awarded a stipulated amount of damages ($100.00) against the remaining individual federal defendants under 8 U.S.C. § 1357. *Chairez v. County of Van Buren,* 542 F.Supp. 706 (W.D.Mich.1982).[1] Contending that this portion of the Immigration and Naturalization Act (Act) does not create an implied private cause of action for damages in the plaintiff, or alternatively that the INS employees did not violate any rights that might be granted under § 1357, the defendants brought a timely appeal to this court. We conclude that the district court

---

1. The individual defendants against whom damages were awarded all were employees of the INS (William Duckham, Ronald Dowdy, Robert McNamara and Jerald D. Jondall).

erroneously inferred a cause of action for damages from 8 U.S.C. § 1357, and therefore reverse.

## I

The plaintiff Chairez is a Mexican citizen who speaks no English. On July 11, 1979, Chairez was employed as a field worker in Hartford, Michigan. While a passenger in a truck, he was stopped and apprehended by state officials, initially in connection with a criminal rape case.[2] The arresting officer, apparently suspecting Chairez of being an illegal alien, contacted Officer William Duckham of the Detroit office of the U.S. Border Patrol by telephone, and Duckham interviewed Chairez (in Spanish) over the phone.

It is not disputed that Chairez was advised of no rights under the Act prior to this phone conversation. However, the parties disagree over the content of the conversation. The defendants claim that Duckham, upon learning of Chairez's undocumented status, asked if Chairez would agree to voluntary departure under 8 U.S.C. § 1252, and that the plaintiff responded affirmatively. Chairez claims that no such questions were asked, and that he did not understand the proceedings until at least two days later, after being incarcerated in the county jail for forty-six hours.

Chairez alleges that this forty-six hour detention violated the procedural protections created by 8 U.S.C. § 1357(a)(2) and its accompanying regulation, 8 C.F.R. § 287.3,[3] and that such a violation was remediable by way of an implied private cause of action for damages against the individual INS employees. The INS contends that the statute and regulation did not apply since, they claimed, Chairez had agreed to "voluntary departure"; that even if applicable, the terms of the statute and regulation had not been violated; and that in any event, the statute does not create an implied cause of action. The district court held that § 1357(a)(2) creates an implied cause of action. In addition, finding as a fact that Chairez had not been accorded the procedures required by the statute and regulation, the district court concluded that the individual defendants had violated the plaintiff's statutory due process rights. *Chairez v. County of Van Buren,* 542 F.Supp. 706, 713–15 (W.D.Mich.1982). Accordingly, the district court granted Chairez's motion for summary judgment against the individual INS defendants. *Id.;* *Chairez v. County of Van Buren,* No. K 79–429, mem. op. at 3 (W.D.Mich. Sept. 5, 1984).

## II

The narrow issue whose resolution we find dispositive of this appeal is whether

---

**2.** Chairez was not charged with the rape, although his companion was. The district court determined that from the first, the plaintiff's arrest was based solely on suspicion of his illegal status, noting that "immigration hold" was the only justification for his incarceration between July 11 and 13. *Chairez v. County of Van Buren,* 542 F.Supp. 706, 715 (W.D.Mich.1982).

**3.** The statute provides, in pertinent part, that an INS agent is empowered to arrest an alien without a warrant only if the agent:

has reason to believe that the alien so arrested is in the United States in violation of [the Act] ... and is likely to escape before a warrant can be obtained ... but the alien arrested shall be taken without unnecessary delay for examination before [a hearing officer].

8 U.S.C. § 1357(a)(2).

The implementing regulation grants additional procedural protections to the alien so-arrested, by requiring the hearing officer to advise:

an alien arrested without warrant of arrest of the reason of his arrest and his right to be represented by counsel of his own choice....

[The alien] shall also be provided with a list of the available free legal services programs ... [and] shall also be advised that any statement he makes may be used against him in a subsequent proceeding and that a decision will be made within 24 hours or less as to whether he will be continued in custody or released on bond or recognizance. Unless voluntary departure has been granted ... the alien's case shall be presented promptly, and in any event within 24 hours ... for a determination as to whether there is prima facie evidence [of illegal entry].

8 C.F.R. § 287.3.

This court has recognized that while a cause of action may be inferred only from a statute and not from its administrative regulations, a court may look to the regulations in determining whether the statute has been violated. *See Marx v. Centran Corp.,* 747 F.2d 1536, 1544–45 (6th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

the district court correctly held that 8 U.S.C. § 1357 creates an implied, private cause of action, permitting aliens deprived of the procedural protections in the statute and regulation to sue INS officials for damages.

■ The existence *vel non* of an implied cause of action is a question of law, freely reviewable on appeal, and turning on application of the familiar four-part test established by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Under this test, a cause of action may be inferred from a federal statute only if: (1) the plaintiff is "one of the class for whose *especial* benefit the statute was enacted"; (2) some "indication of legislative intent, explicit or implicit," suggests that Congress wanted "to create such a remedy [and not] to deny one"; (3) implying such a remedy for the plaintiff would be "consistent with the underlying purposes of the legislative scheme"; and (4) the cause of action is not "one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action." *Id.* at 78, 95 S.Ct. at 2088 (emphasis in original). The district court concluded that each prong of the *Cort* test had been met.

Defendants argue on appeal that subsequent cases have chipped away at three of the four *Cort* factors, leaving intact only the second: an inquiry into congressional intent. However, this court has previously considered and rejected the argument that:

the first *Cort* factor "has taken on less importance" and the third and fourth factors "have become practically irrelevant" in ascertaining Congressional intent to imply a private right of action.... The Supreme Court has recently reaffirmed the use of the *Cort* analysis.

*Howard v. Pierce,* 738 F.2d 722, 724 n. 4 (6th Cir.1984), *citing Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984). Defendants are correct to the extent that they argue that the ultimate question is whether, by implication, Congress *intended* to create a private

remedy, *see, e.g., Daily Income Fund, Inc. v. Fox,* 464 U.S. at 535–36, 104 S.Ct. at 838–39 (1984); but the other three factors remain relevant to the existence of congressional intent. *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981), *citing Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2087. And contrary to the defendant's argument, the Supreme Court has not required manifestation of *affirmative* congressional intent, at least not in the sense of proof of a reasoned decision to create a private remedy. Obviously, if that were the test, no cause of action could ever be implied, because if Congress had "affirmatively" intended to create a private cause of action, it would have done so in the statute itself. Rather, the Court has explained that the sort of "intent" it seeks requires something less than affirmative manifestation:

When Congress intends private litigants to have a cause of action to support their statutory rights, the far better course is for it to specify as much when it creates those rights.... But ... the failure of Congress to do so is not inconsistent with an intent to have such a remedy available to persons benefited by its legislation.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 374, 102 S.Ct. 1825, 1837, 72 L.Ed.2d 182 (1982) (citation omitted). This court has also recognized that "[w]here a statute creates a federal right for the special benefit of a class of persons, the absence in the legislative history of an expressed intent to create a cause of action does not indicate that a private cause of action does not exist." *Marx v. Centran Corp.,* 747 F.2d at 1546. Thus, while we agree that the Supreme Court has defined the critical inquiry as one of congressional intent, it is clear that this court may also consider, in addition to the legislative history and purposes of the statute, "the identity of the class for whose particular benefit the statute was passed, the existence of express statutory remedies adequate to serve the legislative purpose, and the traditional role of the States in affording the relief claimed." *Daily In-*

*come Fund, Inc. v. Fox,* 464 U.S. at 536, 104 S.Ct. at 839. Consideration of all of these factors plainly establishes that the plaintiff may not recover in this case, because it illustrates that Congress had no intent to create a private cause of action under § 1357.

We believe that the district court correctly found two of the four *Cort* factors satisfied. As to factor four, the creation of statutory due process for deportation of aliens does not appear to invade the domain of the states. As to the first factor, defendants argue that the Immigration and Naturalization Act was not enacted to "benefit" aliens, but to benefit the general public by providing for controlled entry of aliens. This observation is correct, but its application sweeps too broadly, by focusing on the entire Act instead of on § 1357. Under such reasoning, hardly *any* statute could be said to be enacted for the "especial benefit" of a particular class. Accordingly, in considering this *Cort* factor, the cases have examined specific provisions, like § 1357, not entire statutory schemes, like the Act. *See, e.g., Daily Income Fund, Inc. v. Fox,* 464 U.S. at 534, 104 S.Ct. at 838 (asking "whether § 36(b) [of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 *et seq.*] confers a right that could be judicially enforced"); *Howard v. Pierce,* 738 F.2d at 723 (asking "whether tenants of low income housing may enforce the Brooke Amendment [42 U.S.C. § 1437a(a)] through private litigation"). *See also Cannon v. University of Chicago,* 441 U.S. 677, 689–91 & n. 13, 99 S.Ct. 1946, 1953–55 & n. 13, 60 L.Ed.2d 560 (1979). When we limit our focus to § 1357 itself, it is difficult to argue that persons suspected of being illegal aliens are not the "especial beneficiaries" of the procedures mandated by the statute and its regulation.

However, even so, Chairez advances only marginally towards the necessary showing of congressional intent to permit an implied cause of action. For although Congress may have enacted § 1357 for the "especial benefit" of allegedly illegal aliens, Congress expressly provided a statutory remedy for the illegal detention of such persons

by INS officials. The Act provides that any alien taken into custody may, through habeas corpus proceedings, obtain review of an order detaining him or her whenever "the Attorney General [INS] is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances," in determining deportability. 8 U.S.C. § 1252(a). *See also* 8 U.S.C. § 1105a(a)(9) ("any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings").

The provision for habeas relief is a significant indication of congressional intent to preclude a damages remedy for at least two reasons. First, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623–24 (1981) (citations omitted). In *Sea Clammers,* the Supreme Court rejected an attempt to infer a private cause of action for damages from two antipollution statutes. The Court expressly relied on the provisions of both acts authorizing private citizens to sue for injunctive relief. The Court concluded:

> In view of these elaborate enforcement provisions it cannot be assumed that Congress intended to authorize by implication additional judicial remedies.

453 U.S. at 14, 101 S.Ct. at 2623. *See also Braun v. United States,* 707 F.2d 922 (6th Cir.1983) (statutory procedures for protecting civil servant-"whistleblowers" from retaliation for bringing to light incidents of mismanagement evidences congressional intent to preclude damage suits against employer). Of course, these cases do not establish that *every* internal remedial procedure, however limited, would present strong evidence of congressional intent to preclude other remedies. But where the statutory remedy provides the injured party adequate relief from the immediate

cause of his or her distress (here, release from unlawful detention), *Sea Clammers* seems to suggest that a court should presume congressional intent to preclude further remedies. That § 1357 may provide an "especial benefit" to allegedly deportable aliens is insufficient evidence of a contrary congressional intent.

Second, the two sections providing for habeas relief amply illustrate that Congress took the time to consider the very problem presented by Chairez's case: wrongful incarceration. When a potentially deportable alien is held illegally in custody either during deportation proceedings (§ 1252) or after a final order of deportation pending appeal (§ 1105a), Congress provided habeas relief as the solution to that problem. This is therefore not a case where congressional inaction creates confusion about congressional intent. Rather, congressional action evidences congressional intent to provide a specific remedy for wrongful detention of aliens by the INS. In light of Congress' evident preference for limiting review of the deportation process, *see* 8 U.S.C. § 1105a(a), we are unwilling to assume that Congress meant more than it said in enacting § 1357's provisions for statutory due process.

### III

In sum, we are persuaded that the habeas corpus remedies authorized for relief of unlawful detention by the Immigration and Naturalization Act represent a congressional decision to preclude an implied remedy for damages under § 1357. Because we find no substantial countervailing evidence of congressional intent to permit such a supplementary remedy, we hold that § 1357 does not create an implied, private cause of action permitting aliens wrongfully detained to sue INS officials for damages.

The judgment of the district court is **Reversed** and the case **Remanded** to the district court with instructions to dismiss the complaint.