**Pansy M. HOLBERT and David Dumas, Plaintiffs–Appellants and Counter–Appellees,**

v.

**Nelson ECHEVERRIA d/b/a Nelson Construction Company, Defendant–Appellee and Counter–Appellants.**

**Nos. 61422, 61212.**

Supreme Court of Oklahoma.

Oct. 20, 1987.

Charles W. Brown, Oklahoma City, for plaintiffs-appellants and counter-appellees.

Reginald D. Gaston, Gaston & Meadows, Norman, for defendant-appellee and counter-appellants.

OPALA, Justice.

The two issues presented for decision are: [1] Does an aggrieved individual have an implied private right of action to recover for a violation of the Oklahoma Consumer Protection Act?[1] and [2] May the defendant, as prevailing party in this breach-of-contract action, recover a counsel-fee award? We answer both questions in the negative.

Pansy M. Holbert and David Dumas [Purchasers] entered on July 29, 1980 into a contract with Nelson Echeverria, d/b/a Nelson Construction Company [Seller], to sell realty with a home to be constructed upon the premises. Seller, who started building the house after Purchasers had obtained financing, asserted the plans were changed several times and he advised Purchasers their modifications would increase the price. Purchasers, on the other hand, disputed that the changes modified the original plans or that Seller discussed with them a contemplated increase in price. After Seller completed the house and declined to convey title for the original contract price, the instant suit was brought. Purchasers alleged under three separate

---

1. 15 O.S.1981 §§ 751 et seq.

claims[2] that Seller had: (1) breached a contract to construct, sell and convey a house; (2) committed fraud, deceit, misrepresentation and negligent misrepresentation against them and (3) violated the Oklahoma Consumer Protection Act [Act].[3]

The trial court ruled for Seller on Purchasers' consumer protection claim. Its decision was grounded on their lack of standing to invoke the remedy provided by the Act. The case then proceeded to trial on the remaining two theories and judgment was rendered for Seller on a jury verdict in his favor. Although in the petition-in-error Purchasers complain both of trial errors and of the pretrial elimination of their consumer protection claim, only the latter issue is argued in their brief.[4]

In a postjudgment proceeding the trial court denied, as unauthorized by law, Seller's plea for a counsel-fee award against Purchasers. Seller brings a counter-appeal from that decision.[5] All pleas for corrective relief stand consolidated for disposition by a single opinion.

## I

## IMPLYING A PRIVATE RIGHT OF ACTION FROM A REGULATORY (PUBLIC–LAW) STATUTE

Purchasers' contention that the Act implies a private right of action rests on the wording in 15 O.S.1981 § 761.1(A) whose text provides:

> "The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer for the payment of actual damages sustained by the customer and costs of litigation *including reasonable attorney's fees.*" [Emphasis supplied.]

An ambiguity in the Act becomes apparent, Purchasers assert, when § 761.1(A) is read with § 756.1(A).[6] The latter authorizes actions to be brought by the Attorney General or a district attorney. The Act is silent as to whether a private party may invoke the remedy created by its terms.

Purchasers contend that the language of § 761.1(A)—allowing an aggrieved consumer "costs of litigation including reasonable attorney fees"—implies a private right of action. Seller, on the other hand, urges a much narrower reading of § 756.1(A), which would confine the authority for bringing an action under the Act to those who are named in § 756.1(A)—the Attorney General or a district attorney.

The concept of implying a private right of action from a regulatory (public-law) statute has never been expressly ad-

---

**2.** Purchasers' separately pleaded "claims" are based on a single transaction. They constitute in law but three distinct and alternative theories of recovery. See *Retherford v. Halliburton Co.*, Okl., 572 P.2d 966, 968–969 [1978] and *Chandler v. Denton*, Okl., 741 P.2d 855 [1987].

**3.** Because no trial transcript is included in the appellate record, our review is limited to the pleadings and other papers on file in the district court.

**4.** Claims to error for which there is no support in argument and authority are deemed abandoned. We do not reach them here either for discussion or resolution. *Peters v. Golden Oil Co.*, Okl., 600 P.2d 330, 331 [1979] and *Harley v. Jobe*, 207 Okl. 296, 249 P.2d 468, 469 [1952]; see also, *Osburn v. Bendix Home Systems, Inc.*, Okl., 613 P.2d 445, 448 [1980].

**5.** The first petition-in-error was filed by Purchasers, Pansy M. Holbert and David Dumas. The petition-in-error by Seller, Nelson Echeverria d/b/a Nelson Construction Company, was filed later. We hence treat Purchasers as principal appellants and Seller as counter-appellant. For definition of counter-appeal, see *Spears v. Preble*, Okl., 661 P.2d 1337, 1344 [1983] (Opala, J. concurring in result in Parts I and II(a) and generally in the remainder).

**6.** The terms of 15 O.S.1981 § 756.1(A) provide: "A. *The Attorney General or a district attorney may bring an action:*
1. To obtain a declaratory judgment that an act or practice violates the Consumer Protection Act;
2. To enjoin, or to obtain a restraining order against a person who has violated, is violating, or is likely to violate the Consumer Protection Act;
3. To recover actual damages and, in the case of unconscionable conduct, penalties as provided by this act, on behalf of an aggrieved consumer, in an individual action only, for violation of the Consumer Protection Act; or
4. *To recover reasonable expenses and investigation fees.*" [Emphasis supplied.]

dressed by Oklahoma jurisprudence. The United States Supreme Court in *Cort v. Ash*[7] established a four-prong test for determining whether there may be an implied private right of action in the face of legislative silence. Under this test, a cause of action could be inferred from a federal public-law statute only if: (1) the plaintiff is one of the class for whose *especial* benefit the statute was enacted; (2) some indication of legislative intent, explicit or implicit, suggests that Congress wanted to create a private remedy and not to deny one; (3) implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme and (4) the cause of action is not one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law.[8]

The fourth factor, which clearly has no application to us as a state forum construing a state statute, is disregarded here. We adopt today the first three factors of *Cort v. Ash* to serve as a multi-prong test for determining whether a private right of action may be implied from a regulatory (public-law) state statute.[9]

■ Before applying the *Cort* test to the present case we must initially determine whether Purchasers were members of some class of persons for whose "especial benefit" the Act was enacted. The determination of a special class is to be effected by a narrow construction. The mere state of being "especially harmed" as the result of an act's violation does not make one a member of a special class the act might seek to protect.[10] To adopt a broad construction for establishing a class would render the first factor of *Cort* virtually meaningless. When a statute is created for the benefit of the public at large, no special class is created in its wake simply because a remedy for injured persons is fashioned.[11]

It is difficult to think of a term broader or more general than "consumer." Every individual, regardless of one's occupation, does in some respect occupy on a daily basis the status of consumer. Because everybody stands included, the term "consumer" does not describe any special class, but rather the public at large. Inasmuch as the Act is for the benefit of the general public, no special class is established for whose especial benefit it was created. Purchasers' contention that a private right of action is implied in the Act cannot hence pass muster under the first factor of the *Cort* analysis.

7. 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 [1975].

8. *Cort v. Ash, supra* note 7, 422 U.S. at 78, 95 S.Ct. at 2088.

9. For post-*Cort* decisions addressing the private-right-of-action issue, see: *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. ——, 106 S.Ct. 3229, 3235, 92 L.Ed.2d 650 [1986]; *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 [1985], *Daily Income Fund, Inc. v. Fox, infra* note 12; *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers, infra* note 12; *Texas Industries, Inc. v. Radcliff Materials, Inc., infra* note 12; *California v. Sierra Club, infra* note 10; *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 [1981]; *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, infra* note 12; *Cannon v. University of Chicago, infra* note 15 and *Touche Ross & Co. v. Redington, infra* note 12.
One federal tribunal has viewed recent Supreme Court jurisprudence as having refined the *Cort* test by emphasizing the presence of indications, either explicit or implicit, of Congressional intent. See, *Pryor v. United States Steel Corp.*, 794 F.2d 52, 57 [2nd Cir.1986]. Another lower federal court noted that the Supreme Court has recently reaffirmed the *Cort* analysis. See, *Chairez v. United States I.N.S.*, 790 F.2d 544, 545–546 [6th Cir.1986]. The courts agree that the central inquiry must be whether Congress intended to create, either expressly or by implication, a private right of action and that the other *Cort* factors are relevant to a judicial search for the congressional intent.

10. The meaning to be given this factor was discussed in *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 [1981].

11. *California v. Sierra Club, supra* note 10, 451 U.S. at 294, 101 S.Ct. at 1779. As Justice White stated by analogy, "[u]nder this [broad] view, a victim of any crime would be deemed an especial beneficiary of the criminal statute's proscription."

The second *Cort* factor—one upon which recent Supreme Court decisions have placed special emphasis [12]—is whether there is any indication of legislative intent, explicit or implicit, either to create a private remedy or to deny one.[13] A reading of the Act does not reveal any explicit intent on the part of the legislature to create or deny a private right of action. Its text must be scrutinized for any implicit indication of intent to create or deny private redress. Legislative intent is ascertained by looking at the precise wording of the Act and studying its history. Established rules of statutory construction are then applied to resolve any ambiguity.

The lack of precise wording yields little information for determining the legislature's intent. Section 756.1 does specifically allow the Attorney General or a district attorney to collect actual damages for an aggrieved consumer and to recover reasonable expenses and investigation fees.[14] Whether these items of recovery are intended to be the "costs of litigation including reasonable attorney's fees" that are mentioned in § 761.1(A) is not crisply articulated. The fact that the Attorney General or a district attorney is specifically authorized to recover for the aggrieved consumer all the elements of actual damage—normally a function of a privately procured consumer's advocate—is of some importance in our search for the presence of legislative intent to fashion a private remedy for the individual consumer.

The legislative history of the Act is silent with regard to a private right of action.[15] The House Journal entries for the date of the Act's passage are of no assistance. They provide merely a record of the vote. There is no mention of any debate in the course of which an allusion was made to a private right of action.[16] A comparison of the present act with its predecessor version is more helpful.

When the Act was originally adopted in 1972 the authority to bring an action was vested solely in the Attorney General.[17] A 1980 amendment authorized district attorneys as well as the Attorney General to prosecute consumer protection claims.[18] This serves as an indication that at least in 1980 the law-making body concerned itself specifically with the problem of who should be able to bring an action under the Act and it then resolved not to confer a remedy on private individuals.

**12.** See *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 535–536, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 [1984] ("In evaluating such a claim, our focus must be on the intent of Congress when it enacted the statute in question"); *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 [1981] ("The key to the inquiry is the intent of the Legislature"); *Texas Industries, Inc. v. Radcliff Materials,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 [1981] ("Our focus, as it is in any case involving the implication of a right of action, is on the intent of Congress"); *California v. Sierra Club, supra* note 10, 451 U.S. at 293, 101 S.Ct. at 1779 (The "ultimate issue is whether Congress intended to create a private right of action"); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 [1979] ("The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction") and *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 [1979] ("The question of the existence of a statutory cause of action is, of course, one of statutory construction").

**13.** *California v. Sierra Club, supra* note 10, 451 U.S. at 302, 101 S.Ct. at 1784. In a concurring opinion Justice Rehnquist stated that legislative intent alone should be dispositive. All the justices agreed that a negative answer to each of the first two *Cort* factors is dispositive of the private claim to a remedy.

**14.** 15 O.S.1981 § 756.1(A)(3) and (4).

**15.** In *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, supra* note 12 at 444 U.S. at 23–24, 100 S.Ct. at 249, the Court noted that legislative silence is clearly not a *per se* bar to a right of action since "[s]uch an intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." See also *Cannon v. University of Chicago,* 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 [1979].

**16.** Oklahoma House Journal, 37th Legislature, 2nd Regular Session, 1980, page 419.

**17.** 15 O.S.Supp.1972 § 755.

**18.** 15 O.S.1981 § 756.1(A).

Applying the maxim *expressio unius est exclusio alterius* [19]—by whose teaching the mention of one thing in a statute implies exclusion of another—we conclude that a private individual is neither explicitly nor implicitly authorized to prosecute a consumer protection claim. The power to seek redress for the Act's violations is expressly conferred on the Attorney General or a district attorney. The Act's failure to sanction invocation of redress by an aggrieved consumer serves to exclude any private right of action.[20]

Finally, were we to assume that the legislature simply failed to consider a private right of action, the same conclusion would have to be reached. This is so because we cannot infer from the statute any right which the legislature did not show some intent to imply. Since under the first two factors of the *Cort* test the Act before us does not pass muster for creating an implied private right of action, there is no need to examine further.[21] The trial court was correct in its pretrial ruling against Purchasers on their consumer protection theory of recovery.

**II**

## COUNSEL FEE RECOVERY IS NOT STATUTORILY AVAILABLE TO A PREVAILING PARTY IN AN ACTION FOR BREACH OF CONTRACT TO CONVEY REAL PROPERTY

In assessing litigation expenses against one's opponent, we continue to stand firmly committed to the American Rule.[22] Absent an authorizing statute or a contract[23] the prevailing party may not recover a counsel-fee award against his adversary.

■ Seller may be allowed a counsel fee only if his plea for the award fall under the categories enumerated in 12 O.S.1981 § 936.[24] Three alternatives could make § 936 applicable to the cause of action Purchasers advanced in this case: (1) the contract in suit provides for recovery of attorney's fee, (2) the contract was for labor or services, or (3) the house could qualify for inclusion under the rubric of "goods, wares, or merchandise."

Firstly, a reading of the contract between Purchasers and Seller reveals no allusion to attorney's fee in the event of

---

**19.** This maxim is to be applied only as an aid in determining legislative intent and not to defeat an apparent intention. See *In re Arbuckle Master Con. Dist., D. Ct., M. Co.,* No. 9660, Okl., 474 P.2d 385, 391–392 [1970] and *Hardesty v. Andro Corporation–Webster Division,* Okl., 555 P.2d 1030, 1036 [1976].

**20.** The use of this rule of statutory construction in conjunction with a *Cort* test was upheld by the Supreme Court in *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, supra* note 12. A narrow construction is consistent with the Court's approach to identifying the presence of an "especially benefited" class in *California v. Sierra Club, supra* note 10.

**21.** *California v. Sierra Club, supra* note 10, 451 U.S. at 298, 101 S.Ct. at 1781.

**22.** See *Moses v. Hoebel,* Okl., 646 P.2d 601, 603 [1982]; *City Nat. Bank & Trust Co. v. Owens,* Okl., 565 P.2d 4 [1977] and *Pierson v. American National Bank of Shawnee,* Okl., 325 P.2d 426, 428 [1958].

**23.** *Moses v. Hoebel, supra* note 22 at 603 and *City Nat. Bank & Trust Co. v. Owens, supra* note 22.

The language of the U.S. Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 260, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 [1975], is appropriate to describe our legislative policy with respect to awarding counsel fees to the victorious litigant:

"Congress has not ... extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted."

The historical antecedents of the American Rule are explained by the Court in *Alyeska.* There the Court expressly rejected one encroachment on the rule which had been gaining popularity in lower federal courts—the use of the "private-attorney-general" device—but reaffirmed its commitment to, and sanction of, the "common fund" and "bad faith" exceptions.

**24.** The terms of 12 O.S.1981 § 936 provide:

"In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, *or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services,* unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." [Emphasis ours.]

litigation. As there is no contractual basis for recovery of a fee, Seller may not rest his plea on that basis.

█ Secondly, the record indicates the primary purpose of the contract was to construct the house and to convey to Purchasers the real property on which it was located.[25] The applicability of § 936's labor-and-services provisions is determined by the underlying nature of the suit.[26] If recovery is sought for labor and services, as in the case of a failure to pay for them, the statute applies. Its provisions are inapposite if the suit be one for damages arising from the breach of an agreement that relates to labor and services.[27] The question to be resolved is whether the damages arose directly from, or are merely collateral to, the rendition of labor or services. Seller did not counterclaim for the value of his labor and services. In fact, the real property in question had been sold to a third party before this cause went to trial. Recovery of money damages for breach of a contract to convey improved real property clearly was the gravamen of the redress sought. The second alternative for application of § 936 must hence also fail.

Thirdly and finally, characterizing a house as "goods, wares or merchandise" would enlarge the scope of the statute to embrace realty. There is no warrant for judicial expansion of the Act's plain meaning.

Under the principle of *expressio unius est exclusio alterius*, § 936 is not available as a foundation for attorney's fee recovery in actions for breach of contract to sell real property.[28]

The lower court's pretrial ruling on the consumer protection theory of the claim and its postjudgment denial of counsel-fee award are affirmed.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, SIMMS, WILSON and SUMMERS, JJ., concur.

HODGES and KAUGER, JJ., concur in Part I and dissent from Part II.

KAUGER, Justice, dissenting to part II only.

I recognize that there are conflicting lines of authority concerning contracts of sale, contracts of labor and "contracts relating thereto." However, the longstanding national jurisprudence holds that if the seller furnishes materials and fashions them according to specifications furnished by the purchaser or according to some model selected, and when without the contract the thing furnished would never have been built or it would never have been put in the particular shape or condition, the contract is one for labor and services.[1] I would award attorneys fees pursuant to 12 O.S.1981 § 936(2), and I would overrule *Burrows Const. Co. v. Independent Sch.*

---

25. It is clear from the record that Purchasers' action was to secure money damages for breach of contract, and not to seek recovery for labor and services within the meaning of 12 O.S.1981 § 936. In their third amended petition Purchasers allege, inter alia, that (a) they entered into a contract with Seller to convey certain real estate upon which he promised to build a house and sell it to them at a specified price; (b) in reliance on the contract they paid earnest money to Seller; (3) they secured a loan to purchase the house and Seller used their loan commitment to acquire a construction loan to build the house; and (4) upon completion of the house, Seller increased the purchase price and refused to convey title or possession of the property for less, all in breach of their agreement.

26. *Burrows Const. Co. v. Independent Sch. Dist.*, Okl., 704 P.2d 1136, 1138 [1985] and *Ferrell*

*Construction Co., Inc. v. Russell Creek Coal Co.*, Okl., 645 P.2d 1005, 1011 [1982].

27. *Burrows Const. Co. v. Independent Sch. Dist.*, supra note 26 at 1138 and *Russell v. Flanagan*, Okl., 544 P.2d 510, 511–512 [1975].

28. Real property contract disputes do not generally qualify for statutory counsel-fee award. See, *Todoroff v. Burton*, Okl., 719 P.2d 456 [1986].

1. *Eastlake Const. Co., Inc. v. Hess*, 102 Wash.2d 30, 686 P.2d 465, 475 (1984); *Hague v. Cleary*, 48 P.2d 5, 9–10 (Cal.1935); *Flynn v. Dougherty*, 91 Cal. 669, 27 P. 1080–81 (1891). See also, Annot., "Construction and Effect of Exception Making the Statute of Frauds Provision Inapplicable Where Goods are Manufactured by Seller for Buyer," 25 A.L.R.2d 672, 680 (1952).

*Dist.,* 704 P.2d 1136 (Okla.1985) and *Russell v. Flanagan,* 544 P.2d 510 (Okla.1975).