2000 OK 66

Brian WALLS, et al., Plaintiffs,

v.

The AMERICAN TOBACCO COMPANY, et al., Defendants.

No. 92,324.

Supreme Court of Oklahoma.

Sept. 19, 2000.

---

**12.** See Rule 6.16, RGDP.

certify a class of cigarette smokers in a case against six current or former manufacturers of cigarettes and the Council for Tobacco Research. The Federal Court has determined that there are certain unresolved questions of Oklahoma law that may be determinative. The Court has certified the following questions of law to this Court pursuant to 20 O.S.1991, 1601 et seq.:

"1. Assuming *arguendo* that a product was sold in violation of other provisions of the Oklahoma Consumer Protection Act ("OCPA"), may a party bring an action as an "aggrieved consumer" under 15 O.S. 761.1A solely as a result of his or her payment of the purchase price for that product?

"2. May an individual person bring a claim for liability under 15 O.S. 761.1C against an entity based on a violation of the OCPA?

"3. If an action is brought under either or both 15 O.S. 761.1A or 15 O.S. 761.1C, is that action limited to conduct that occurred since 1988?

"4. If the answer to question 1 is yes, if a class is certified under the OCPA consisting of all persons who have purchased such an OCPA violating product in Oklahoma solely on the basis of the purchase price, will the members of such class be precluded from bringing any separate actions sounding either in tort or contract by virtue of any Oklahoma law prohibiting split causes of action?"

¶2 For the reasons discussed below, our answer to questions 1 and 2 is no, and our answer to question 3 is yes. Because the answer to question 1 is no, we do not reach question 4.

Derek S. Casey, Hutton & Hutton, Wichita, Kansas for plaintiffs.

Richard C. Ford, Leanne Burnett, Victor E. Morgan, Crowe & Dunlevy, Oklahoma City, Oklahoma for defendants.

WINCHESTER, J.

¶1 The United States District Court for the Northern District of Oklahoma has before it the question of whether it should

### I. THE PERTINENT AMENDMENTS TO THE OCPA.

¶3 The OCPA was first enacted in 1972. The title of the OCPA expressly vested authority in the Attorney General for enforcement of the OCPA. The Attorney General was authorized to bring actions to restrain the unlawful practices enumerated in the OCPA. 1972 Okla.Sess.Laws, ch. 227, § 5, codified in title 15, § 755. The OCPA also

provided for civil penalties. Pursuant to the original civil penalty provision, 1972 Okla. Sess.Laws, ch. 227, § 11, codified at § 761 of title 15, the legislature authorized the Attorney General to recover a civil penalty of not more than $5,000.00 per violation from any person who violated the terms of a permanent injunction.

¶ 4 The first relevant amendment to the OCPA occurred in 1980. See 1980 Okla.Sess. Laws, ch. 192 § 4, codified at title 15, § 761.1. The 1980 amendment provided in pertinent part:

"A. The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer for the payment of actual damages sustained by the customer and costs of litigation including reasonable attorney's fees.

"B. The commission of any act or practice declared to be a violation of the Consumer Protection Act, if such act or practice is also found to be unconscionable, shall render the violator liable to the aggrieved customer for the payment of a civil penalty, recoverable in an individual action only, in a sum set by the court of not more than Two Thousand Dollars ($2,000) for each violation....

"C. Any person who wilfully violates the terms of any injunction or court order issued pursuant to the Consumer Protection Act shall forfeit and pay a civil penalty of not more than Ten Thousand Dollars ($10,000.00) per violation, in addition to other penalties that may be imposed by the court, as the court shall deem necessary and proper. For the purposes of this section, the district court issuing an injunction shall retain jurisdiction, and in such cases, the Attorney General, acting in the name of the state, or a district attorney may petition for recovery of civil penalties.

"D. In administering and pursuing actions under this act, the Attorney General and a district attorney are authorized to sue for and collect reasonable expenses and investigation fees as determined by the court. Civil penalties or contempt penalties sued for and recovered by the Attorney General or a district attorney shall be used in furtherance of their duties and activities under the Consumer Protection Act."

¶ 5 The above quoted section is the one which was examined by this Court in *Holbert v. Echeverria*, 1987 OK 99, 744 P.2d 960. In *Holbert*, this Court held that a private individual was not authorized to prosecute a consumer protection claim, and that the power to seek redress for violations of the OCPA was expressly conferred upon the Attorney General or a district attorney. *Holbert*, 1987 OK 99, ¶ 15, 744 P.2d at 965.

¶ 6 After the *Holbert* decision, the legislature amended § 761.1(A) to expressly provide a private right of action to an aggrieved consumer. Section 761.1(C) was left undisturbed. 1988 Okla.Sess.Laws, ch.161, § 2. The 1988 amendment to § 761.1(A), with the additions underlined, provided:

"A. The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer for the payment of actual damages sustained by the customer and costs of litigation including reasonable attorney's fees, *and the aggrieved consumer shall have a private right of action for damages, including but not limited to, costs and attorney's fees. In any private action for damages for a violation of the Consumer Protection Act the court shall, subsequent to adjudication on the merits and upon motion of the prevailing party, determine whether a claim or defense asserted in the action by a nonprevailing party was asserted in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party an amount not to exceed Ten Thousand Dollars ($10,000) for reasonable costs, including attorney's fees, incurred with respect to such claim or defense.*"

¶ 7 The next pertinent amendment to § 761.1 occurred in 1994. 1994 Okla.Sess.Laws, ch.235, § 4. The 1994 amendment added a phrase, which is underlined, to § 761.1(C):

"C. Any person who *is found to be in violation of the Oklahoma Consumer Protection Act in a civil action or who* willfully violates the terms of any injunction or court order issued pursuant to the Consumer Protection Act shall forfeit and pay a civil penalty of not more than Ten Thousand Dollars ($10,000.00) per violation, in addition to other penalties that may be imposed by the court, as the court shall deem necessary and proper. For the purposes of this section, the district court issuing an injunction shall retain jurisdiction, and in such cases, the Attorney General, acting in the name of the state, or a district attorney may petition for recovery of civil penalties."

¶ 8 Section 761.1 has not changed, in the parts pertinent to the present inquiry, since the 1994 amendment (minor amendments to other subsections of § 761.1 occurred in 1997, 1998 and 1999). Thus § 761.1(A) is currently identical to the subsection as amended in 1988, and § 761.1(C) is identical to the subsection as amended in 1994.

## II. ASSUMING ARGUENDO THAT A PRODUCT WAS SOLD IN VIOLATION OF OTHER PROVISIONS OF THE OCPA, A PARTY MAY NOT BRING AN ACTION AS AN "AGGRIEVED CONSUMER"UNDER § 761.1(A) SOLELY AS A RESULT OF HIS OR HER PAYMENT OF THE PURCHASE PRICE FOR THAT PRODUCT.

¶ 9 The first certified question asks if a party may sue as an aggrieved consumer pursuant to § 761.1(A) solely as a result of paying the purchase price for a product. The plaintiffs argue that the consumer need not prove actual damages. Subsection A specifically states that an act or practice declared to be a violation of the OCPA renders the violator liable to the aggrieved consumer for the payment of actual damages. The 1988 amendment in response to *Holbert* added that the aggrieved consumer shall have a private right of action for damages. Title 23 O.S.1991, 61 provides: "For the breach of an obligation not arising from con-

tract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."

¶ 10 The plaintiffs' argue that being an aggrieved consumer merely requires proof that a plaintiff was the consumer in an unlawful transaction. But 761.1(A) plainly states otherwise. That subsection confers upon an "aggrieved consumer" a private right of action for damages. Actual damages are a necessary element of a claim under this subsection. In *Whitlock v. Bob Moore Cadillac, Inc.*, 1997 OK 56, 938 P.2d 737, the plaintiff sued for damages based on fraud and violation of the OCPA. The trial court granted summary judgment to the defendant. In affirming, we observed that the record revealed that the plaintiffs had incurred no monetary damages and had received precisely what they had bargained for. *Whitlock*, 1997 OK 56, ¶ 3, 938 P.2d at 738.

¶ 11 Even the term "aggrieved consumer" implies that the consumer must have suffered some detriment caused by a violation of the OCPA. The consumer must have suffered some detriment to successfully pursue a private right of action under § 761.1(A). We have defined "aggrieved party," for the purpose of appellate standing, as one whose pecuniary interest in the subject matter is directly and injuriously affected, or one whose right in property is either established or divested by the decision from which the appeal is prosecuted. *Cleary Petroleum Corp. v. Harrison*, 1980 OK 188, ¶ 4, 621 P.2d 528, 530. We have also held that an aggrieved party must have a personal stake in the litigation because of an actual or threatened distinct injury which has a causal connection between the alleged wrong and the actions challenged. *Turley v. Flag Redfern Oil Co.*, 1989 OK 144, ¶ 12, 782 P.2d 130, 135.

¶ 12 Although the parties have cited many cases from other states, these cases are not particularly helpful in interpreting § 761.1 because other states' consumer protection acts contain very different language.[1] How-

---

**1.** A list (including citations and summaries) of    other states' consumer protection statutes can be

ever, the Kansas Consumer Protection Act, like § 761.1(A), permits a consumer who is aggrieved by a violation of the Act to recover actual damages. K.S.A. 50–636(b). In *Finstad v. Washburn University of Topeka*, 252 Kan. 465, 845 P.2d 685 (1993), the Kansas Supreme Court determined that the use of the term "aggrieved consumer" in the Kansas Act meant that a consumer must show loss or injury resulting from a violation of the Act.

¶ 13 Therefore, to have a private right of action under § 761.1(A), a consumer must suffer some detriment or loss as a result of a violation of the OCPA. Accordingly, a person may not bring an action as an aggrieved consumer under § 761.1(A) solely as a result of his or her payment of the purchase price for that product. An essential element of a claim under § 761.1(A) is actual injury or damage caused by a violation of the OCPA.

## III. AN INDIVIDUAL MAY NOT SEEK A PENALTY UNDER § 761.1C AGAINST AN ENTITY BASED ON A VIOLATION OF THE OCPA.

¶ 14 Section 761.1(C) expressly permits the Attorney General, acting in the name of the state, or a district attorney, to petition the district court for the recovery of civil penalties of not more than $10,000 per violation of the OCPA. The plaintiffs in the present case contend that § 761.1(C) also permits an aggrieved consumer to recover this penalty because the authority to recover a civil penalty arises out of the defendants' wrongful acts, and not the status of the prosecuting party. To support this argument, the plaintiffs cite cases from other states. However, the consumer protection acts of many other states expressly permit a consumer to sue to recover a civil penalty. Section 761.1(C) contains no such express permission.

¶ 15 Additionally, such a private right of action to recover a civil penalty under § 761.1(C) cannot be implied. As discussed in Section I of this opinion, in *Holbert*, 1987 OK 99, ¶ 15, 744 P.2d at 965, we held that a

found in Appendix A to *Unfair and Deceptive Acts and Practices*, 4th ed., published by the National Consumer Law Center.

consumer does not have a private right of action under the OCPA, and that as a result, the legislature amended § 761.1(A) after the *Holbert* opinion to confer such a private right of action. Significantly, the legislature did not amend § 761.1(C) at that time.

¶ 16 When we examined § 761.1(C) in *Holbert*, the civil penalty could only be sought by the Attorney General or a district attorney after an OCPA defendant violated an injunction or a court order that had been issued previously.[2] That is the reason section 761.1(C) provides that the district court issuing an injunction shall retain jurisdiction. Since *Holbert*, § 761.1(C) was amended (in 1994) to permit the civil penalty to be assessed against a person who is found to be in violation of the OCPA in a civil action. The plain meaning of this amendment is that the civil penalty may now be assessed in an action brought by the Attorney General or a district attorney upon the showing of a violation of the OCPA, even though the person has not violated a previously issued court order. There is still nothing in § 761.1(C) which would imply that an aggrieved consumer can seek the imposition of the civil penalty provided for in this subsection.

¶ 17 Additionally, any construction of § 761.1(C) which would find that a consumer could bring an action under this subsection to impose a civil penalty would be contrary to its express language. The last sentence of § 761.1(C) provides "[f]or the purposes of this section, the district court issuing an injunction shall retain jurisdiction, and in such cases, the Attorney General, acting in the name of the state, or a district attorney may petition for the recovery of civil penalties."

¶ 18 Further, legislative intent must be ascertained from the whole section. *Comer v. Preferred Risk Mut. Ins. Co.*, 1999 OK 86, ¶ 18, 991 P.2d 1006, 1013–1014. Section 761.1(B) permits a consumer to recover a civil penalty of $2000, in addition to damages, if the actions of the defendant are found to be unconscionable. Therefore, the

2. Title 15 O.S. 756.1(2) permits the Attorney General or a district attorney to bring an action to obtain an injunction.

legislature has provided for civil penalties in a consumer case in this subsection. Also, section 761.1(D) provides that civil penalties recovered by state officials shall be used in furtherance of their duties and activities under the OCPA. Thus, the legislature expressly stated that civil penalties should be collected by the state to be used in further enforcement activities.

¶ 19 Language similar to the last sentence of § 761.1(C) in the Washington consumer protection statute (RCW 19.86.140) has been construed by Washington courts to mean that the state can be the only recipient of a civil penalty. See *Stigall v. Courtesy Chevrolet-Pontiac, Inc.*, 15 Wash.App. 739, 551 P.2d 763 and *Aungst v. Roberts Construction Co., Inc.*, 95 Wash.2d 439, 625 P.2d 167 (1981).

■ ¶ 20 Accordingly, an individual person may not seek a civil penalty under § 761.1(C).

## IV. A PRIVATE RIGHT OF ACTION UNDER § 761.1(A) OF THE OCPA IS LIMITED TO CONDUCT THAT OCCURRED SINCE THE EFFECTIVE DATE OF THE 1988 AMENDMENT.

■ ¶ 21 Since there is no private right of action under § 761.1(C), the issue raised by the third question presented is whether the 1988 amendment to § 761.1(A) operated prospectively or retrospectively. Statutes are generally presumed to be prospective in application. This presumption is rebutted when there is legislative intent that is expressly declared or necessarily implied from the language used. Doubt must be resolved against retrospective application. *Fraternal Order of Police v. Choctaw*, 1996 OK 78 ¶ 40, 933 P.2d 261, 271.

¶ 22 The plaintiffs argue that because the legislature amended § 761.1(A) in the next legislative session following the *Holbert* case, that fact is sufficient to show that the legislature always intended that consumers should have a private right of action. Thus, plaintiffs contend, the legislature intended the amendment to operate retrospectively. However, the timing of the amendment, with no other indication of legislative intent, is not sufficient to remove doubt. In the case of *In re Bomgardner*, 1985 OK 59, 711 P.2d 92, we examined a series of legislative responses to our opinions on the scope of grandparental visitation and found that legislative intent to make the changes retrospective could be implied from the purpose of the statute.

¶ 23 The 1988 amendment to § 761.1(A) does not expressly declare that the amendment shall operate retrospectively. Further, there is nothing in the language used in the amendment which would necessarily imply a legislative intent that the amendment was to operate retrospectively. We carefully examined the history of the OCPA in *Holbert*, and found that the legislature did not intend that there be a private right of action. Thus, the argument that a private right of action was always intended is contrary to our decision in *Holbert*.

■ ¶ 24 Additionally, statutes that effect changes in substantive rights are presumed to operate prospectively. *Fraternal Order of Police*, 1996 OK 78 ¶ 40, 933 P.2d at 271, *Majors v. Good*, 1992 OK 76 ¶ 12, 832 P.2d 420, 422. On the other hand, statutes affecting procedure only may be applied retroactively. A procedural change is one that affects the remedy only, and not the right. *Trinity Broadcasting Corp. v. Leeco Oil Co.* 1984 OK 80 ¶ 9, 692 P.2d 1364, 1366–67. The 1988 amendment to § 761.1(A), which changed the OCPA to permit a private right of action where there was none before, is a substantive change.

¶ 25 In *Thomas v. Cumberland Operating Company*, 1977 OK 164 ¶ 10, 569 P.2d 974, 977, we found that a statutory amendment which permitted newly recoverable damages upon the wrongful death of a child, which were non-existent before the amendment, created and enlarged substantive rights and operated prospectively. Similarly, in *Hammons v. Muskogee Medical Center Authority*, 1985 OK 22 ¶¶ 6–7, 697 P.2d 539, 542, we held that an amendment to the Political Subdivision Tort Claims Act that included public trusts within its protection and thereby removed the right to sue them unless the Act was followed, was not a mere procedural provision and could not be applied retrospectively.

¶ 26 Consequently, we hold that a private right of action under § 761.1(A) is limited to conduct which occurred after the effective date of the 1988 amendment.

## V. CONCLUSION

¶ 27 We answer the questions posed by the United States District Court for the Northern District of Oklahoma as follows:

1. Assuming *arguendo* that a product was sold in violation of other provisions of the OCPA, a party may not bring an action as an "aggrieved consumer" under § 761.1(A) solely as a result of his or her payment of the purchase price for that product.

2. An individual person may not bring a claim for liability under § 761.1(C) against an entity based on a violation of the OCPA.

3. If an action is brought by a consumer under § 761.1(A), that action is limited to conduct that occurred since 1988.

4. Because the answer to question 1 is no, we do not answer question 4.

CERTIFIED QUESTIONS ANSWERED.

¶ 28 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, KAUGER, WATT, and BOUDREAU, JJ., concur.