2012 OK 96

**WILLIAMS COMPANIES, INC.,**
**(Own Risk), Petitioner,**

v.

**Kristy DUNKELGOD and the Workers'**
**Compensation Court, Respondents.**

No. 108,990.

Supreme Court of Oklahoma.

Nov. 20, 2012.

Rehearing Denied Jan. 23, 2013.

Karen McGivern Curthoys, Tulsa, Oklahoma, for Petitioner.

Victor R. Owens, Tulsa, Oklahoma, for Respondents.

## OPINION

WATT, J.:

¶ 1 In this matter on certiorari, we address two issues:

1. Did the Court of Civil Appeals (COCA) err when it applied the "clear weight of the evidence" standard of review to the Workers' Compensation Court's order awarding a lift van?

2. Did COCA err when it held that Claimant's temporary total disability (TTD) award was limited to a maximum of 300 weeks?

We answer both questions in the affirmative. COCA failed to apply the law in effect at the time of Claimant's injury. We vacate and remand to the Workers' Compensation Court for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Kristy Dunkelgod (Claimant or Dunkelgod) was injured on June 11, 2001, while working for Petitioner Williams Companies, Inc. (Employer) in Tulsa, Oklahoma. On her Form 3, she alleged a single incident injury to her back, with psychological overlay, which occurred while she was "lifting moving boxes all day." She also reserved all body parts. She later amended her Form 3 to add an injury of "consequential bowel/rectal distress" and again reserved all body parts. The trial court awarded TTD benefits on July 15, 2004, for injury to the lumbar back, and reserved the issues of "resulting psychological overlay and consequential injury in the form of bowel/rectal distress" for future hearing. The court found she had been, and continued to be, temporarily totally disabled since her injury and was "in need of further medical treatment, care and attention...." Employer's request to terminate benefits was denied.[1]

¶ 3 On October 20, 2008, the trial court ordered Employer to reimburse Claimant for a "Go–Go" scooter and a scooter lift for a vehicle. On January 15, 2010, the court ordered Employer to provide a driving evaluation and a van. The court found that Claimant's need for transportation was permanent and that neither leasing a van nor paying for private transportation was cost effective. After Employer appealed, the three judge panel reversed and remanded for consideration as to the "medical necessity" for the van.

¶ 4 On July 12, 2010, the trial court issued two orders. The court again awarded the van, equipped with lift service for her scooter, based on Dr. C.'s recommendation for transportation assistance to improve "claimant's mobility, independence and ultimate psychological recovery/stability." The order also contained the finding that Claimant's need for transportation was "medically/psychologically necessary."

¶ 5 The other order issued on July 12, 2010 directed Employer to pay an additional 52 weeks of TTD benefits and to provide treatment, including back surgery at "L2–3", a thoracic spine MRI, and epidural steroid injections in the lumbar spine and hip. On November 19, 2010, in its Order on Appeal, the panel affirmed the award of the van and additional TTD benefits, as ordered on July 12, 2010.[2]

---

1. On July 8, 2005, the court ordered TTD benefits to continue until further order. On March 12, 2008, the trial court found Claimant remained temporarily totally disabled and ordered 52 additional weeks of TTD. A similar order was entered on May 5, 2009.

2. The three judge panel's order also modified the trial court's order to correct Employer's name, to reserve the issue of injury to the thoracic spine, and to order Employer to pay interest on the accrued portion of the 52 week TTD award. However, as to all other matters in the orders, the panel held: "The orders filed herein on July

¶ 6 Employer appealed the three judge panel's order. In a published opinion filed on November 18, 2011, COCA found the law applicable to Claimant's injuries provided a maximum of 300 weeks of TTD benefits. It vacated the panel's order and remanded for a determination of the date on which Claimant had received the maximum benefits. COCA also held the finding that the lift van was a medical necessity was "against the clear weight of the evidence." Claimant filed her petition for certiorari which was granted on February 22, 2012.

## WHILE A WORKERS' COMPENSATION CLAIM IS PENDING, THE LAW AS IT EXISTED AT THE TIME OF THE INJURY DETERMINES THE SUBSTANTIVE RIGHTS AND LIABILITIES OF THE PARTIES, DESPITE AN INTERVENING STATUTORY AMENDMENT

**a. The standard of review, determined on the date of injury, is a substantive right requiring prospective application.**

¶ 7 Before the 2010 statutory amendment to 85 O.S. § 3.6(C), discussed below, or the enactment of the new Workers' Compensation Code (the Code), 85 O.S.2011, §§ 301–413 on August 26, 2011, *Parks v. Norman Municipal Hosp.*, 1984 OK 53, 684 P.2d 548, was the landmark case addressing the standard of review in workers' compensation appeals. Appellate court review was limited to questions of law. 85 O.S.1981 § 26.[3] Final orders of the Workers' Compensation Court were subject to the traditional "any-competent-evidence test of correctness."[4] This was the standard of review at the time of Claimant's injury on June 11, 2001.

¶ 8 Effective November 1, 2010, 85 O.S. § 3.6(C) was amended to provide:

The Supreme Court may modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:

. . .

4. The order or **award** was **against the clear weight of the evidence.** [emphasis added].

¶ 9 On March 1, 2011, this Court entered an order in *Dunlap v. The Multiple Injury Trust Fund*, 2011 OK 14, 249 P.3d 951, acknowledging the amendment of § 3.6(C). We stated:

The amendment notwithstanding, the Court of Civil Appeals properly applied the "any competent evidence" standard of review in deciding this case because **the injury underlying the claim for benefits occurred prior to effective date of the amendment.** *Knott v. Halliburton*, 1988 OK 29, ¶ 4, 752 P.2d 812, 813–14. The amendment authorizing review of an order or award to determine whether it was against the clear weight of the evidence applies prospectively to claims for injuries that occur after the effective date of the amendment. [emphasis added].

¶ 10 We subsequently upheld the rule in *Dunlap,* supra, in *Nomac Drilling LLC v. Mowdy*, 2012 OK 45, ¶ 8, 277 P.3d 1282, 1284:

Because Claimant's injury precedes the effective date of the November 1, 2010 amendments to the Workers' Compensation Act, the law at the time of Claimant's injury governs. Thus, the 'any competent evidence' standard applies. *See Dunlap v. Multiple Injury Trust Fund*, 2011 OK 14,

---

12, 2010, as modified, shall remain in full force and effect as the orders of this Court."

**3.** Section 26, at the time of *Parks* and at the time of injury in the present case, June 11, 2001, provided in pertinent part:

B. [T]he decision of the Court shall be final as to all questions of fact, and except as provided in Section 3.6 of this title, as to all questions of law.

**4.** We explained:

By force of § 26, *all* findings of fact made in the trial tribunal's decision under review are

conclusive and binding unless they have been ascertained to lack support in competent evidence. It is only in the absence of such support that a trial tribunal's decision may be viewed as erroneous *as a matter of law* and hence subject to appellate vacation. [emphasis in original] [footnotes omitted].

*Parks, supra,* 684 P.2d at 551–552. At that time, 85 O.S.2001 § 3.6(F) provided:

F. Benefits for an injury shall be determined by the law in effect at the time of injury; benefits for death shall be determined by the law in effect at the time of death.

¶ 1, 249 P.3d 951, 952. This Court must sustain the Workers' Compensation Court's determination of a fact issue if it is supported by any competent evidence. *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 12, 684 P.2d 548, 552.

¶ 11 *Dunlap* and *Nomac, supra,* both construe the November 1, 2010 amendment to 85 O.S. § 3.6 which provides for the review standard of "against the clear weight of the evidence." [5] Now, for the first time, this Court construes 85 O.S.2011 § 340, the new Code section on Appeals. Section 340 contains no provision for using the law in effect at the time of injury. In fact, § 340(D) provides for **disregarding** the law on the date of injury:

> [A]fter the effective date of this act, **regardless of the date of injury,** the Supreme Court may modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:
>
> . . .
>
> 4. The order or **award** was **against the clear weight of the evidence.** [emphasis added]

¶ 12 However, the new Code does include a provision at 85 O.S.2011 § 315, similar to § 3.6(F) or § 3.6(G) in the previous Act:

> **Benefits** for a single event injury shall be determined by the law in effect at the time of injury ... Benefits for death shall be determined by the law in effect at the time of death. [emphasis added]

¶ 13 Without deciding whether sections 340(D) and 315 are internally inconsistent,[6] we consider instead whether the Legislature's obvious intent that the "against the clear weight of the evidence" standard of review must apply in every appeal filed after August 26, 2011, is consistent with our workers' compensation jurisprudence. We hold it is not.

¶ 14 A cause of action accrues when the plaintiff could have first maintained an action. See gen., *Cowart v. Piper Aircraft Corporation,* 1983 OK 66, 665 P.2d 315, 318. In workers' compensation cases, the claim accrues on the date of the injury. *King Manufacturing v. Meadows,* 2005 OK 78, 127 P.3d 584; *Independent School District No. 89 v. McReynolds,* 1974 OK 136, 528 P.2d 313; *Spec. Ind. Fund v. Michaud,* 1959 OK 203, 345 P.2d 891; and *General Electric Co. v. Folsom,* 1958 OK 279, 332 P.2d 950. The date of injury or death also determines the compensation allowed a particular claimant. *Independent School District No. 89 v. McReynolds,* 1974 OK 136, 528 P.2d 313; *Spec. Ind. Fund v. Michaud, supra;* and *General Electric Co. v. Folsom, supra.* The date of injury has long been the point in time in workers' compensation cases when rights of the parties become established, including when a claim must be filed;[7] which law to use for determining benefits,[8] and a schedule

---

5. Although 85 O.S. Supp.2010, § 3.6(C) did not contain the all-encompassing language found in § 340(D), in *Dunlap* and *Nomac,* supra, we relied on the fact that the injuries underlying these claims occurred prior to the effective date of the amendment of § 3.6(C).

6. Section 340 provides for "against the clear weight of the evidence" review without regard to the date of injury, while § 315 ties the benefits to be recovered to the law "at the time of injury.".

7. The statute of limitations under the new law enacted in 2011, 85 O.S.2011 § 318, provides in part:
   A. The right to claim compensation under the Workers' Compensation Code shall be forever barred unless, within two (2) years after the date of accidental injury or death, a claim for compensation is filed with the Workers' Compensation Court....
   The former law, 85 O.S. § 43, was similar to the current law.

8. We note that at the time of Claimant's injury, as well as in 2010 when § 3.6 was amended, the statute provided at § 3.6(F) (2001) and § 3.6(G) (2010), as follows:

   > Benefits for an injury shall be determined by the law in effect at the time of injury; benefits for death shall be determined by the law in effect at the time of death.

   The new Code, at 85 O.S.2011 § 315, provides:
   > **Benefits** for a single event injury shall be determined by the law in effect **at the time of injury.** Benefits for a cumulative trauma injury or occupational disease or illness shall be determined by the law in effect at the time the employee knew or reasonably should have known that the injury, occupational disease or illness was related to work activity. Benefits for death shall be determined by the law in effect at the time of death. [emphasis added].

of compensation to determine the amount of benefits a claimant is entitled to receive.[9] We stated in *King Manufacturing v. Meadows*, 127 P.3d at 589:

> The general rule is that the **law in effect at the time of an employee's injury** controls in workers' compensation matters. A compensation claim is controlled by the laws in existence at the time of injury and not by laws enacted thereafter. The right of an employee to compensation arises from the contractual relationship existing between the employee and the employer **on the date of injury.** The statutes **then in force** form a part of the contract and determine the substantive rights and obligations of the parties. **No subsequent amendment can operate retrospectively to affect in any way the rights and obligations which are fixed.** [footnotes omitted] [emphasis added].

¶ 15 In *King*, we cited to *Cole v. Silverado Foods, Inc.*, 2003 OK 81, 78 P.3d 542, which addressed the effect of an amendment to 85 O.S. § 43(B) decreasing the length of time in which a claimant must request the adjudication of a pending claim. The effect of the amendment in that case was to foreclose the claimant's right to have her claim heard. We held that the amendment of § 43(B) in that case was much more than a remedial, procedural action which impacted only the time in which a claim could be brought. Its impact would have destroyed the claimant's substantive right to receive a portion of her unadjudicated "statutorily 'recoverable compensation.' " *Cole*, ¶ 12, 78 P.3d at 548, citing *Magnolia Petroleum Co. v. Watkins*, 1936 OK 372, 57 P.2d 622, 623, 177 Okl. 30. Significantly, we also found the statute allows an employer to invoke the same lapse of time to defeat its own statutory liability, i.e., a "liability-defeating defense," for unadjudicated benefits. *Cole*, ¶ 11–12, 78 P.3d at 547–548. We said:

Section 43(B) stands as an employer's liability-defeating defense against an employee's untimely quest for permanent disability's adjudication. A statutory defense constitutes an accrued right. To modify one's defense against a claim changes its character and potency. That change decreases here the time period from five to three years during which an employer may extinguish its liability. Retroactive application of § 43(B) would make the employer's defense much more extensive than it stood at the time the claim was brought. The amendment also affects the merits of Cole's claim. She would have to confront a different defense. **Because the amendment refashions § 43(B) into a different and more extensive liability-defeating mechanism, it destroys the claimant's right to present her claim free from being subjected to new and more extensive instruments of destruction. Inasmuch as the amended version of § 43(B) operates here on rights in existence, its terms are subject solely to prospective application.** [emphasis added].

*Cole v. Silverado*, ¶ 13, 78 P.3d at 548.

¶ 16 The Oklahoma Constitution guarantees that any cause of action which has accrued may not be destroyed by the Legislature after the suit has been commenced. Similarly, claims which have become barred, due to the passage of time or by statute, may not be revived by the Legislature. See Okla. Const., Art. 5, § 52:

**Revival of rights or remedies—Taking away cause of action or defense**

The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State. After suit has been commenced on any **cause of action,** the Legislature shall have no power to

---

9. The former and current statutes are shown below:

85 O.S.2001 § 22(2)(c):
(c) With respect to injuries occurring on or after November 1, 1997, total payments of compensation for temporary total disability may not exceed a maximum of one hundred fifty-six (156) weeks in the aggregate except for good cause shown, as determined by the Court.

85 O.S.2011 § 331:
Except as otherwise provided in this act, the average weekly wages of the injured employee **at the time of the injury** shall be taken as the basis upon which to compute compensation. . . .

take away such cause of action, or destroy any existing defense to such suit. [emphasis added].

¶ 17 Additionally, accrued rights and proceedings begun pursuant to statute are protected against the repeal of those statutes. See Okla. Const., Art. 5, § 54: [10]

**Repeal of statute—Effect**

The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute.

¶ 18 The standard of review applicable to a workers' compensation appeal is that which is in effect when the claim accrues. It is determined as of the date of injury and is a substantive right which remains unaffected by later-enacted legislation, despite statutory language to the contrary. See *Dunlap, Nomac,* supra; Okla. Const., Art. 5, §§ 52, 54. Our constitution protects the accrual of a cause of action so that a person's failure to exercise rights under a statute prior to the statute's repeal does not result in the loss of those rights. *Hammons v. Muskogee Medical Center Authority,* 1985 OK 22, 697 P.2d 539, 542. Generally, a statute or its amendments will have only prospective effect unless it clearly provides otherwise. *Id.* While the statute at issue, § 340(D), provides that the date of injury is irrelevant, applying this provision as written would allow the unconstitutional abrogation of an accrued right. *Hammons,* supra, 697 P.2d at 542.

### b. Evidence presented

¶ 19 COCA held at paragraph 19 of the opinion:

**10.** We held in *Cowart,* supra, that Art. 5, § 54 prohibited the repeal of an act from destroying a cause of action which had already accrued, even though the action had not been filed before the statute was repealed. 665 P.2d at 317–318.

**11.** Despite the appellate court's reference made to "any competent evidence" it is clear COCA weighed the evidence.

[T]he **clear weight of the evidence** does not show a van is medically necessary. Indeed the record does not include even **any competent evidence** of medical necessity. [emphasis added].[11]

¶ 20 COCA referred to the medical report of Dr. C.,[12] one of Claimant's treating physicians, who opined that a lift van would be appropriate for Claimant's "independence." However, COCA held that his medical opinion was insufficient to prove "medical necessity." The appellate court held that the record does not support the award of a van, stating at ¶ 19:

[D]unkelgod is able to walk and drive, and she has previously been awarded a scooter and a lift to attach to her own vehicle. The record does not show that more equipment of this nature is necessary and we therefore vacate the award of a lift van.

¶ 21 In support of its holding, COCA distinguished this case with *Oklahoma Gas & Electric Co. v. Chronister,* 2005 OK CIV APP 32, 114 P.3d 455 (cert. denied), in which a van was awarded to a workers' compensation claimant who could not walk. COCA thus distinguished *Chronister* because Dunkelgod is not paralyzed. Claimant argues Oklahoma law does not require a finding she is paralyzed in order for a van to be awarded. We agree. This Court has never held that paralysis must be shown to prove "medical necessity" for the award of a vehicle with the necessary equipment.

¶ 22 COCA also refers to Dr. R.'s January 14, 2010 deposition in which he was asked if Claimant was physically able to drive. He opined that he did not know whether she actually needed a van "as much as a car with a big front door and a big seat to get into. I don't know that she needs a van." When asked if a van would be "medically necessary" he answered he did not know. Howev-

**12.** On May 11, 2009, Dr. C. stated in his written report:

She had a request today to be considered for a lift vehicle which I think would be appropriate in order to give her some degree of independence. Her mother has recently had a double mastectomy and cannot help her with lifting her equipment and the like. I also recommend that she have a new MRI of the lumbar spine and return when this has been done.

er, on recross examination, Dr. R. elaborated as to why the scooter, which had been previously ordered by the workers' compensation court, was important for Claimant's recovery, thus making the van necessary. He testified that having the scooter would allow her to get out of the house more, which she would like, and to become more social which would be beneficial to her. When asked if a person in her present condition could go to the zoo and walk all day, he stated, "No. Absolutely not." He was asked if that would be a reason she would need the scooter. He testified:

A. I think yes. If going to Philbrook, the zoo, going to BOK, she would be a whole lot better if she had a scooter for faster movement, and then she could get out of it and park it and do some things. But having that, as long as she wasn't dependent on it all the time, would be a benefit for her.

Q. Okay. So what you recommend is walk when you can, but if it's going to hurt you go ahead and use the Go–Go scooter?

A. That's correct.

Q. And in regards to loading and unloading a Go–Go scooter and doing those things you could see where the rationale comes in regards to the lift van now; right?

A. Yes, sir.

Q. And so far as that may be being reasonable **or necessary,** you could see under those scenarios where it would be? [emphasis added].

A. Absolutely, yes, sir.

¶ 23 The record also establishes that Claimant's car is broken down, so a lift attached to an existing vehicle is not an option. Also, Claimant's mother who was previously loading the scooter into a car, has had a double mastectomy and is unable now to assist her.

¶ 24 Dr. C.'s report indicates that being able to get around with the use of a lift van would make her more independent which would be beneficial to her. Claimant objected to being transported in a van with strangers who may be sick, as she was worried about the spread of germs. She received a favorable driving evaluation, and Dr. R. stated he saw no problem with her driving, because she has learned to tolerate her pain medication. Moreover, the evidence shows the great expense of paying for medical transportation and for leasing a van.[13] As to purchasing vans with lifts, evidence was presented of four available 2008 Dodge Grand Caravans ranging in price from $16,900.00 to $17,500.00. The mileage ranged from 15,763 to 27,855 on the four vehicles.

¶ 25 By its holding, COCA elevated the required level of proof to a higher standard of review than Claimant anticipated when she presented it at trial. Thus, the **same evidence,** submitted when the "any competent evidence" standard was in effect, was reviewed by COCA under "the clear weight of the evidence" standard because of the statutory amendments. **When a claimant's evidence is presented at trial,** he or she should know the standard of review by which the evidence will be scrutinized. Evidence which is sufficient to meet the "any competent evidence" test may not suffice under the more demanding "against the clear weight of the evidence" standard. If Claimant had known that her evidence would be considered under a different standard, she may have submitted different evidence **at trial.** All of the hearings and adjudications in this case occurred before August 26, 2011.[14]

¶ 26 We hold that COCA's review of the award of the van under the "against the clear weight of the evidence" standard destroyed Claimant's right to "benefits," i.e., her "award", of the scooter and the van. Using a more stringent standard of review, COCA found the evidence weighed more heavily in Employer's favor as to "medical necessity."

13. The transportation companies in the report include Medride which is not located in Tulsa, and PMSI which charged $52.08 for the initial load and $170.00 per one-way trip. Leasing a van to accommodate a scooter costs $2799.94 per month, including taxes and insurance.

14. The order on appeal, affirming the orders of July 12, 2010, was filed on November 19, 2010. Her Petition for Review was filed on December 8, 2010.

¶ 27 Under the "any competent evidence" standard of review and the evidence presented, we hold the "medical necessity" for a van with a lift was shown. The evidence is more than sufficient to show the scooter is necessary for Claimant and that she has to rely on herself to transport it wherever she goes. The van containing the lift equipment is, therefore, a necessary part of the award if the scooter is to have any value at all for her recovery. See *Zwahlen v. B.F. Goodrich,* 1988 OK 54, 755 P.2d 658; *Oklahoma Gas & Electric Co. v. Chronister,* supra.

¶ 28 At the time of an injury, future amendments to statutes are unknown. Claimants, employers and insurers alike make decisions **at that time** about whether and how to pursue a claim for workers' compensation. The accrual of these substantive rights, including the appropriate standard of review for a particular claim, cannot be diminished by statutory language claiming otherwise, i.e., "regardless of the date of injury" found in § 340(D). We, therefore, hold the inserted language "regardless of the date of injury" in 85 O.S.2011 § 340(D) is a nullity as to claims pending on August 26, 2011. The appellate standard of review in this case is "any competent evidence" because that is the standard in effect on the date of Claimant's injury.

## THE STATUTE IN EFFECT AT THE TIME OF CLAIMANT'S INJURY DID NOT LIMIT THE TTD COMPENSATION TO A TOTAL OF 300 WEEKS

¶ 29 In holding that Dunkelgod was limited to a maximum of 300 weeks of TTD benefits, COCA stated at ¶ 21:

Dunkelgod is subject to a 300 week maximum award of TTD, both under the version of Section 22 in effect at the time of the injury, based on the reasoning of *Ranchwood,*[15] and under the 2005 amendment to Section 22.[16] It is unclear from the record when Dunkelgod reached that point. We vacate the award and remand for determination of when Dunkelgod reached the 300 week maximum.

¶ 30 Claimant argues that COCA applied the wrong statute for injuries occurring on June 11, 2001. She contends the statute in effect at the time of her injury, 85 O.S.2001 § 22(2)(c),[17] contained no limit on TTD as long as good cause was shown for extending benefits beyond the statutory limit of 156 weeks. We agree and hold the law in effect at the time of Claimant's injury included no 300–week maximum for TTD benefits and that "good cause" for additional TTD benefits was shown at the time of the award on July 12, 2010.

¶ 31 We find error in COCA's holding for several reasons. First, *Ranchwood* is inapposite to this case. COCA construed the 2001 statute which is also applicable herein. However, the issue was whether the claimant was entitled to additional TTD benefits despite his failure to request them at the 42nd week of the previous award, required by subsection (b) of § 22(2), relating to injuries incurred after November 1, 1994. That issue is not presented here. Next, COCA's application of subsection (b) to apply the 300–week maximum to subsection (c), which contains no such limitation, is clearly error in view of the plain language used in subsection (c). Claimant's injury date clearly and unequivocally places her within subsection (c) of the 2001 statute. Finally, reliance on the 2005 amendment to 85 O.S. § 22(2)(c) is erro-

**15.** *Ranchwood Auto Lube v. Woessner,* 2004 OK CIV APP 24, 86 P.3d 1101.

**16.** 85 O.S. Supp.2005 § 22(2)(c) provided:

(c) With respect to injuries occurring on or after November 1, 1997, total payments of compensation for temporary total disability may not exceed a maximum of one hundred fifty-six (156) weeks in the aggregate except for good cause shown, as determined by the Court. **Total payments of compensation for temporary total disability, inclusive of consequential injuries, may not exceed a maximum of three hun-**

dred **(300) weeks in the aggregate.** [emphasis added]

**17.** 85 O.S.2001 § 22(2)(c) provides:

2. Temporary Total Disability....

...

(c) With respect to injuries occurring on or after November 1, 1997, total payments of compensation for temporary total disability may not exceed a maximum of one hundred fifty-six (156) weeks in the aggregate **except for good cause shown, as determined by the Court.** [emphasis added].

neous because her injury occurred on June 11, 2001. On that date, the 2005 statute did not exist. COCA's attempt to use it here, through the application of *Ranchwood*, supra, contravenes workers' compensation law before,[18] and after,[19] August 26, 2011.

## CONCLUSION

¶ 32 The law in effect at the time of injury determines the standard of review in workers' compensation appeals. COCA's application of the "clear weight of the evidence" standard of review destroyed Claimant's constitutionally protected substantive right to have her appeal considered under the "any competent evidence" standard of review. Similarly, consideration of the law on the date of injury also determines the appropriate law to use for determining the amount of TTD benefits. The application of the later-enacted version of 85 O.S § 22 denied Claimant continuing TTD benefits to which she was entitled.

¶ 33 COURT OF CIVIL APPEALS' OPINION IS VACATED; WORKERS' COMPENSATION COURT'S ORDER IS SUSTAINED AND REMANDED FOR FURTHER PROCEEDINGS.

CONCUR: COLBERT, V.C.J., WATT, WINCHESTER, EDMONDSON and REIF, JJ.

CONCUR IN PART; DISSENT IN PART: KAUGER, COMBS (joins KAUGER, J.) and GURICH, JJ.

KAUGER, J., concurring in part and dissenting in part:

¶ 1 I agree with the majority that the law as it stands on the date of injury is the appropriate law to use for determining TTD

benefits. I also agree with the majority that the law in effect at the time of injury determines the standard of review. The Court of Civil Appeals erred by applying a clear weight of the evidence standard to the trial court's evaluation of Claimant's request that Williams Companies, Inc. be required to provide Claimant with a van for transportation. However, I dissent because under any standard, including the proper standard of any competent evidence, claimant is not entitled to a van because no competent evidence was presented that it is medically necessary. Additionally, it appears inappropriate under the facts for Claimant to be operating a motor vehicle of any kind.

**I. The Proper Standard of Review Is Any Competent Evidence and the Statute in Effect at the Time of Claimant's Injury did not Limit TTD Benefits to 300 Weeks.**

¶ 2 The majority is correct that the standard of review applicable to a workers' compensation appeal is that which is in effect when the claim accrues, notwithstanding the Legislature's attempt to alter this standard. At the time of Claimant's injury on June 11, 2001, the standard of review required for review of factual determinations by a three-judge panel of the Worker's Compensation Court was one of any competent evidence.[1] The legislature enacted the new Workers' Compensation Code, 85 O.S.2011, §§ 301–413 on August 26, 2011. The new version of § 340, concerning appeals, provides for an against the clear weight of the evidence standard of review without regard for the date of the injury, with the intent that an against the clear weight of the evidence standard of review will apply to every appeal filed after August 26, 2011.[2]

---

**18.** See 85 O.S.2001 § 3.6(F):

Benefits for an injury shall be determined by the law in effect at the time of injury;

. . . .

**19.** See 85 O.S.2011 § 315:

Benefits for a single event injury shall be determined by the law in effect at the time of injury . . . .

**1.** *Parks v. Norman Municipal Hosp.*, 1984 OK 53, ¶ 2, 684 P.2d 548. ("[W]hile the three-judge

panel is governed, in its re-examination of the trial judge's factual findings, by the clear-weight-of-the-evidence standard, the Supreme Court or the Court of Appeals, in reviewing the panel-altered factual determinations, must apply the any-competent-evidence test.")

**2.** Title 85 O.S.2011 § 340(D) provides in pertinent part:

After the effective date of this act, regardless of the date of injury, the Supreme Court may modify, reverse, remand for rehearing, or set aside the

¶3 The Legislature's attempt to apply a clear weight of the evidence standard of review for all appeals from the Worker's Compensation Court is invalid. The Oklahoma Constitution protects the right to pursue causes of action that have already accrued, or when suit has been commenced, from being terminated by legislative action. Okla. Const., art. 5, § 52 provides that:

> The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State. After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit.

Okla. Const., art. 5, § 54 provides that:

> The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute.

In worker's compensation cases, the date a claim accrues is the date of the injury suffered by the claimant.[3] In *King Manufacturing v. Meadows*, 2005 OK 78, 127 P.3d 584, we held that:

> The general rule is that the law in effect at the time of an employee's injury controls in workers' compensation matters. A compensation claim is controlled by the laws in existence at the time of injury and not by laws enacted thereafter. The right of an employee to compensation arises from the contractual relationship existing between the employee and the employer on the date of injury. The statutes then in force form a

part of the contract and determine the substantive rights and obligations of the parties. No subsequent amendment can operate retrospectively to affect in any way the rights and obligations which are fixed.[4]

¶4 When construing the November 1, 2010 amendment to 85 O.S. § 3.6, this Court previously held that the standard of review a claim is subject to on appeal is a substantive right determined by the law in effect on the date of the injury, and where the injury occurred before the amendment to the statute, the traditional standard of any competent evidence applied.[5] While this case concerns the new code section on appeal, 85 O.S.2011 § 340, the same logic applies. The legislature may not alter the standard of review for a claim by statute after that claim has accrued, because the standard of review is a substantive right which is unaffected by later-enacted legislation, regardless of the intent of the legislature, and is protected by the Oklahoma Constitution.[6]

¶5 For similar reasons, the Court of Appeals erred in determining that Claimant was limited to a maximum of 300 weeks of TTD benefits. The statute in effect at the time of Claimant's injury, 85 O.S.2001 § 22(2)(c), contained no limit on TTD as long as good cause was shown for extending benefits beyond the statutory limit of 156 weeks.[7] Good cause was shown at the time of the award on July 12, 2010, and so there was no statutory cap on the number of weeks Claimant could be awarded TTD benefits: applying the 2005 statute would be inappropriate for the reasons discussed above, because the law was changed after the occurrence of Claimant's

---

order or award upon any of the following grounds:
1. The Court acted without or in excess of its powers;
2. The order or award was contrary to law;
3. The order or award was procured by fraud; or
4. The order or award was against the clear weight of the evidence.

**3.** *King Manufacturing v. Meadows*, 2005 OK 78, ¶11, 127 P.3d 584

**4.** *King Manufacturing v. Meadows*, note 3, supra. (footnotes omitted).

**5.** *Nomac Drilling LLC v. Mowdy*, 2012 OK 45, ¶8, 277 P.3d 1282; *Dunlap v. The Multiple Injury Trust Fund*, 2011 OK 14, ¶1, 249 P.3d 951.

**6.** Okla. Const., art. 5, § 52; Okla. Const., art. 5, § 54.

**7.** Title 85 O.S.2001 § 22(2)(c) provides:

injuries occurring on or after November 1, 1997, total payments of compensation for temporary total disability may not exceed a maximum of one hundred fifty-six (156) weeks in the aggregate except for good cause shown, as determined by the Court.

injuries and therefore after her claim accrued.

## II. Claimant is not Entitled to a Van Because No Competent Evidence Was Presented That it is Medically Necessary.

¶ 6 I dissent, however, to the award of a lift van to the Claimant because no competent evidence was presented that a van is medically necessary. In order for an employer to be required to provide medical apparatus, the apparatus must be necessary.[8] Not only is the Claimant in this case capable of walking, no competent evidence has been presented that a van is in some way essential to her recovery. The statements of Dr. Capehart, one of Claimant's treating physicians, indicate that he believed a lift vehicle "would be appropriate in order to give [Claimant] some degree of independence" and the trial court, in its July, 2010, order noted that Dr. Capehart "recommends transportation assistance to improve claimant's mobility, independence and ultimate psychological recovery/stability." The Court of Appeals correctly indicated that Claimant has not been found to have a compensable psychological overlay. The rest of Dr. Capehart's points indicate that he believes a van would be appropriate to give the plaintiff some independence, but no evidence has been presented to link the claimant's independence and ability to go get ice cream whenever she wants to any kind of medical necessity related to her injuries.

¶ 7 Another of Claimant's treating physicians, Dr. James Rodgers, stated in his deposition that he doesn't know that claimant needs a van. When asked if a van or even a car with a big seat would be medically necessary for claimant, Dr. Rodgers responded:

I don't know. I just don't know. I'm not sure I have the information to know whether that's even—why it's even being considered in her case. I've got vans being considered in paralyzed spinal cord injury patients, but she looks better now to me in the last three visits than before.[9]

Dr. Rodgers noted that generally, vans are medically necessary for patients that require hand controls in place of pedals because they are unable to operate a normal vehicle. When asked if he knew of any medical reason why Claimant would need the van, Dr. Rodgers could only say "I'm trying to not answer. I'm trying to say I don't have the answer."[10] That testimony from Dr. Rogers can hardly be considered competent evidence that providing Claimant with a van is medically necessary.

¶ 8 On further examination, when Dr. Rogers was asked if he believed claimant being able to get out of the house more and be social would be beneficial to her, Dr. Rogers responded that it would.[11] Something that is beneficial or that might be good for Claimant's independence is being confused with something that is medically necessary. They are not the same thing. Dr. Rogers admitted that he could see the reasoning behind a lift van when it came to transporting the Claimant's scooter to places like the zoo, and when the climate is less than ideal such as when it is 110 degrees or icy, but that still provides no link to a lift van itself being medically necessary to Claimant's recovery.

¶ 9 When asked if there were things she would like to be able to get out and do, Claimant responded:

Sometimes, you know, if I want to run to Braum's and get an ice cream Sunday, or something like that, during the day, well, I can't do it. I have to wait until, you know, my sister is available, or maybe later when mom gets home, but she's always so tired that she can't—usually can't take me to get one, so I don't get one.[12]

There is no reason Claimant would even need her scooter, let alone a lift van to carry it, for

8. *Zwahlen v. B.F. Goodrich*, 1988 OK 54, ¶ 4, 755 P.2d 658.

9. Deposition of Dr. James Rodgers, January 14, 2010, at 19.

10. Deposition of Dr. James Rodgers, January 14, 2010, at 19.

11. Deposition of Dr. James Rodgers, January 14, 2010, at 23.

12. Deposition of Kristy Dunkelgod, January 4, 2010, at 18.

a trip to a place such as Braum's. She would never need to leave a vehicle if she went through the drive-through. Even if she wanted to get out of the car, she is fully capable of walking for short periods of time and Dr. Rodgers mentions specifically that her becoming dependent on the scooter would be bad for her.[13] It appears that Claimant believes her former employer should be required to replace her broken vehicle, not because a lift van is medically necessary to her recovery, but simply so that she has a vehicle to go where she wants, when she wants, and cannot afford one herself.[14]

¶ 10 When offered the use of a service to come and pick her up when she needed to go someplace, Claimant objected because of the tight quarters she would be forced to share with strangers due to germs and because it would not give her the independence she desires.[15] In her deposition, Claimant had the following conversation:

Q: Do you care if they provide you with some service to come by to pick you up?

A: Yes, I do.

Q: Why is that?

A: A) because of the strangers, B) because I'm susceptible to all germs and sicknesses, and if people have them, and it's in tight quarters, then I would catch it.[16]

Evidence was not presented that a lift van, rather than some other form of transportation such as a service, was medically necessary to Claimant's recovery; she simply appears to prefer that option. When reminded that she would also have to be around others and their germs when going to Braum's for ice cream, Claimant responded "but it's not sitting on germs, and doing all this stuff." [17]

¶ 11 While no competent evidence was presented that providing Claimant with a lift van was medically necessary, it does appear from the evidence presented that there is a valid question as to whether Claimant should be operating a motor vehicle of any kind. Claimant stated that she takes several different medications on a daily basis: Oxycontin, Soma, Mobic, Klonopin, Hydrocodone, Baclofen, Neurontin, Effexor, Lunesta, Trazodone, a generic version of Senna, and Relistor.[18] When Claimant renewed her driver's license several months before her deposition, she did not take a driving test, and did not inform them that she was taking over 10 different medications, including Oxycontin and Hydrocodone.[19] Claimant's attorney pointed out that certain medications recommend against driving while they are being taken, but that others in Claimant's family would be able to drive the van if she was on certain medications that day. Not only does Claimant take these medications every day, but having to rely on other family members for transport seems to be what Claimant wishes to avoid by getting the van in the first place. If other family members will have to drive it because she is under the influence of her medications, then what is the point in awarding it?

¶ 12 Claimant's dependence on medication is something that appears to be unlikely to change in the near future. Dr. Rodgers stated he believed that "she'll always be on some—she'll always be on a sizeable amount of medication. I think the chance of her being off all the narcotics that she's on is less than one percent that she'll be off of them." [20]

13. Deposition of Dr. James Rodgers, January 14, 2010, at 23.

14. Deposition of Kristy Dunkelgod, January 4, 2010, at 18.

15. Deposition of Kristy Dunkelgod, January 4, 2010, at 20. Claimant appears to be completely opposed to the kind of contact with strangers that is the norm for the residents of many major U.S. cities who use public transportation on a daily basis to commute to and from their place of employment and to go about their lives.

16. Deposition of Kristy Dunkelgod, January 4, 2010, at 19–20.

17. Deposition of Kristy Dunkelgod, January 4, 2010, at 34.

18. Deposition of Kristy Dunkelgod, January 4, 2010, at 16.

19. Deposition of Kristy Dunkelgod, January 4, 2010, at 24.

20. Deposition of Dr. James Rodgers, January 14, 2010, at 23.

He elaborated further on the problems faced by someone taking the amount of medication Claimant is taking:

> [T]here's a price for being able to drive, and that's taking half of the medication and half the narcotics she's taking. We can do anything as a bonus prize because if you reduced her in half of what she's taking now, she won't have any sedative effects from the narcotics. And after you take narcotics for a period of time—if we took six pills today, we'd both be asleep, but if we take six pills every day for a month, we probably are not going to have any sedation problems. We'll probably have some sleep problems, getting to sleep is where you have problems if you're on narcotics for a while. So she is bright and wake [sic] when I see her. There's no question her reaction time—moving rapidly is not as good when you're on the medications she's on.[21]

¶ 13 No competent evidence was presented that providing Claimant with a lift van was medically necessary, but evidence was presented that perhaps allowing Claimant to drive at all was not in the best interests of her or the public. Claimant's desire for independence and greater freedom of movement does not mean she is entitled to a free vehicle at the expense of her former employer. I agree with the majority that the law as it stands on the date of injury is the appropriate law to use for determining the amount of TTD benefits a claimant is entitled to. Further, I agree with the majority's holding that the proper standard of review of the medical necessity of providing Claimant with a lift van is whether there was any competent evidence rather than the clear weight of the evidence. However, Claimant fails to meet the burden in this case under any standard of review. Accordingly, I respectfully dissent regarding the award of a lift van to Claimant.

GURICH, J., concurring in part and dissenting in part:

¶ 1 I agree with the portion of the majority opinion that holds that the statute in effect at the time of the claimant's injury did not limit the TTD compensation to a total of 300 weeks. However, I dissent to the award of a lift van. I join the portion of Justice Kauger's opinion that concludes Claimant is not entitled to the award of a lift van. I also dissent to the portion of the majority opinion that holds that the 2011 amendment to the standard of review applies prospectively only.

¶ 2 This Court's workers' compensation case law directs that statutes may apply retroactively *when the Legislature has made its intent to do so clear.* *CNA Ins. Co. v. Ellis*, 2006 OK 81, ¶ 13, 148 P.3d 874, 877.[1] When an amended statute directs that it be applied retroactively, we can only disregard the statutory directive and apply the amendment prospectively if the amendment affects the *substantive* rights of the parties.

¶ 3 Here, the intent of the Legislature to apply this statute retroactively can be found in the plain words of the statute: "After the effective date of this act, *regardless of the date of injury,* the Supreme Court may modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds ... [t]he order or award was against the clear weight of the evidence." 85 O.S.2011 § 340(D) (emphasis added). In *Dunlap v. Multiple Injury Trust Fund*, 2011 OK 14, 249 P.3d 951, we construed the 2010 amendment to the statute, which changed the appellate standard of review from any competent evidence to against the clear weight of the evidence, but was silent on the issue of retroactivity. Consequently, we held that the amendment could only be applied prospectively. *Dunlap*, 2011 OK 14, ¶ 1, 249 P.3d at 951. Because the language of the 2011 statute *unequivocally* states that the new standard of review applies regardless of the date of injury, the question before this

---

**21.** Deposition of Dr. James Rodgers, January 14, 2010, at 18.

**1.** Amendments relating solely to remedies and affecting only modes of procedure "are generally held to operate retroactively and apply to pending proceedings." *Scruggs v. Edwards*, 2007 OK

6, ¶ 8, 154 P.3d 1257, 1261. Any doubts about whether the Legislature intended for an amendment to apply prospectively or retroactively must be resolved against retroactive effect. *Ellis*, 2006 OK 81, ¶ 13, 148 P.3d at 877.

Court is whether the amendment affects the substantive rights of the parties.

¶ 4 In *Cole v. Silverado Foods, Inc.*, 2003 OK 81, ¶ 15, 78 P.3d 542, 548, the amendment at issue shortened the time to request a hearing for complete adjudication from five years to three years. In applying the change prospectively, we held that "after-enacted legislation that increases or diminishes the amount of recoverable compensation or alters the elements of the claim or defense by imposition of new conditions affects the parties' substantive rights and liabilities." *Id.*

¶ 5 In *American Airlines Inc. v. Crabb*, 2009 OK 68, 221 P.3d 1289, a 2005 amendment redefined cumulative trauma, adding language throughout the specific statute.[2] We held that the addition of the language "the major cause of which results from," added a new element to the claim which was not part of the definition in effect on the date of the injury. *Id.* ¶ 16, 221 P.3d at 1292. As such, the amendment's new requirement that a claimant prove that cumulative trauma was the "major cause" of the injury did not apply retroactively because it substantively affected the parties' rights by requiring an additional element of proof. *Id.*

¶ 6 In *Ellis*, 2006 OK 81, ¶ 1, 148 P.3d at 875, we reviewed a 2001 amendment concerning cumulative trauma injuries. Before the 2001 amendment, the law allowed apportionment of liability between successive employers and their insurers; after the 2001 amendment, liability was imposed on the last of the successive employers to expose claimant to cumulative trauma. *Id.* ¶ 7, 148 P.3d at 876. We held that the obligation to pay benefits was a substantive right vested and fixed by law at the time of claimant's injury, so the amendment imposing liability on the last employer did not apply retroactively. *Id.* ¶¶ 14–15, 148 P.3d at 877–78.

¶ 7 In *Scruggs*, two 2005 amendments to the Workers' Compensation Act were at issue.[3] One amendment defined objective medical evidence as evidence that met "the criteria of Federal Rule of Evidence 702 and all U.S. Supreme Court case law applicable thereto," and the other amendment stated that compensation for permanent disability had to be supported by competent medical testimony which included application of Rule 702 of the Federal Rules of Evidence. *Id.* ¶ 2, 154 P.3d at 1259. We held that both before and after the 2005 amendments, a compensable claim for injury resulting from inhalation of a toxic substance was based upon scientific evidence and that application of *Daubert* and *Kumho* by the 2005 amendments made no substantive change in the law and applied to all claims regardless of the claimant's date of injury. *Id.* ¶ 22, 154 P.3d at 1265.

¶ 8 In *King Mfg. v. Meadows*, 2005 OK 78, ¶ 1, 127 P.3d 584, 586, a 1995 amendment limited the sum of permanent partial disability awards for a change in condition to 100%. The 100% limits were absent from the 1991 statute in effect at the time of claimant's initial injury. *Id.* We held that the award of permanent disability for a change in condition was governed by the statutory language in effect at the time of the initial injury, rather than the statutory limits in effect when the change in condition was discovered because the change in the statute affected "employees' rights regarding the amount of recoverable compensation." *Id.* ¶ 14, 127 P.3d at 589–90.

¶ 9 In this case, the trial court found that the claimant had a compensable injury in 2001 to her lumbar back and awarded her TTD.[4] Claimant subsequently sought other medical treatment including a three-wheeled

---

**2.** In that case, cumulative trauma was redefined as "a compensable injury, the major cause of which results from employment activities which are repetitive in nature and engaged in over a period of time and which is supported by objective medical evidence as defined in this section." *Id.* ¶ 14, 221 P.3d at 1292. We held that "describing the injury as a 'compensable' injury did nothing more than express a modifier that was already implied" and "specifying that objective medical evidence was necessary to prove the

'injury' and 'major cause' was a permissible procedural requirement that 'made no substantive change in the law.'" *Id.* ¶ 15, 221 P.3d at 1292.

**3.** *Scruggs*, 2007 OK 6, ¶¶ 1–2, 154 P.3d at 1259.

**4.** The trial court reserved the issues of psychological overlay and consequential bowel injury. The record reflects that the court has yet to decide these issues.

scooter and vehicle lift, which the trial court awarded.[5] The Claimant now seeks a lift van, which is the subject of this appeal.

¶ 10 The change to the standard of review on appeal does not add any additional elements of proof to the claim and does not increase or diminish the amount of recoverable compensation. 85 O.S.2001 § 14(A)(1), in effect on the date of claimant's injury,[6] provides that an employer must promptly provide an injured employee with medical, surgical or attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus as may be necessary after the injury. 85 O.S.2001 § 14(A)(1). The employer is required to provide the requested treatment apparatus to the claimant only if the apparatus is medically "necessary." *Zwahlen v. B.F. Goodrich,* 1988 OK 54, ¶ 4, 755 P.2d 658, 659.

¶ 11 The *Scruggs* case is most analogous to the present case. There we found that both before and after the amendment, scientific evidence was required to prove a compensable claim resulting from inhalation of a toxic substance.[7] Likewise, in this case, both before and after the amendment to the standard of review, claimant had to produce competent medical evidence to prove by the preponderance of the evidence that the lift van was medically necessary. Using the new standard, the Court of Civil Appeals reweighed the evidence and arrived at a different result than the trial judge. However, the claimant's burden to produce sufficient evidence to support her claim for a lift van remained the same.[8] Her cause of action for the lift van was not "destroyed" by the 2011 change as the majority claims. Additionally, the majority's speculation that the claimant might have presented different evidence at trial had she known the standard of review on appeal would be the clear weight of the evidence standard is unconvincing. Claimant knew at trial that if her case was appealed to a three-judge panel, that the panel would have the right to reweigh the evidence based on their review under the clear weight of the evidence standard.

¶ 12 Although not binding, I am also persuaded by decisions in several other jurisdictions that have held that workers' compensation standards of review are procedural and may be applied retroactively.[9] Additionally, at least three of the four divisions of the Court of Civil Appeals have found that the language of the statute controls and have

5.  The record reveals that during the hearing on the lift van, claimant testified that the vehicle lift, previously awarded by the trial court, was no longer sufficient because her car didn't work anymore.

6.  At the time of the trial on the lift van, 85 O.S.2005 § 14(A)(1) was in effect. The language of the 2005 statute is the same as the language of the 2001 statute.

7.  *Scruggs,* 2007 OK 6, ¶ 22, 154 P.3d at 1265.

8.  As the Court of Civil Appeals pointed out in this case, although the parties relied primarily on the any competent evidence standard of review in their briefs, both acknowledged the statutory change to the standard of review and also argued their positions under the clear weight of the evidence standard " '[j]ust in case' this Honorable Court applie[d] the standard of review of reweighing the evidence." *See* Answer Brief of Respondent at 12.

9.  *See Truckstops of America, Inc. v. Engram,* 220 Ga.App. 289, 469 S.E.2d 425, 427 (1996) ("The statute is procedural, there is no vested right in preserving appellate review of the ALJ's decision under the [statute] which existed at the time the ALJ [heard] the case."); *Pospisil's Case,* 402 Mass. 820, 525 N.E.2d 646, 647 (1988) (holding that statute relating to standard of review had no impact on the merits questions involved in determining the amount of compensation or the parties' substantive rights to receive or not to pay compensation and so was procedural and had to be applied retroactively); *Armstrong v. Asten–Hill Co.,* 90 Or.App. 200, 752 P.2d 312, 314 (1988) ("The scope of review has nothing to do with entitlement to 'payment of benefits as authorized, and in the amounts provided for, by the law in force at the time [of] the injury.' "); *Kinninger v. Ind. Claim Appeals Office of State of Colo.,* 759 P.2d 766, 767–68 (Colo.App.1988) (finding that the change to the standard of review was a procedural change in the law that was applicable to all cases pending at the time the new statute became effective); *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54, 58 (Minn.1984) (finding that the amendment to the standard of review did not impose any new liability, burden, or obligation on either party, nor did the amendment deprive or alter the employee's right to collect benefits upon presentation of adequate proof of entitlement; and the amendments did not change the kind of evidence required to make out a claim).

applied the new appellate standard of review, regardless of the date of injury.[10]

¶ 13 We have said that it is not the job of this Court to "interfere 'with the wisdom or policy of the legislation.' " *Rivas v. Parkland Manor*, 2000 OK 68, ¶ 15, 12 P.3d 452, 457. "The formulation of the particular elements and details of the Workers' Compensation Act clearly falls within the legislature's province." *Id.* ¶ 19, 12 P.3d at 458. The amendment to the standard of review found in 85 O.S.2011 § 340(D) controls, and the standard of review in this appeal should be the clear weight of the evidence standard.

## DISSENT: TAYLOR, C.J.

¶ 1 I join and agree with Justice Kauger in her writing concerning the total lack of competent evidence of the medical necessity for the lift van.

10. *Harvey v. Auto Plus of Woodward*, 2012 OK CIV APP 92, ¶ 18, 287 P.3d 410 (Div. I) ("We hold that the Legislature clearly expressed its intent that 85 O.S. § 340(D) be applied retroactively and that the statute does not affect the substantive rights of the parties."); *Lee v. Sundance Rehab. Corp.*, 2012 OK CIV APP 77, ¶ 5, 284 P.3d 469, 471 (Div. II) ("The standard of review in effect when this appeal was ready for decision is that provided in [85 O.S.2011 § 340(d)], and we review the factual issues in this case to determine whether they are against the clear weight of the evidence."); *Rural Waste Mgmt. and Indem. Ins. Co. of North America v. Harold Mock and The Workers' Comp. Court*, case no. 108,330 (Dec. 9, 2011) (Div. III) (unpublished), *cert. granted* April 23, 2012. Division IV has issued conflicting opinions. *Compare McGuire v. N. Glantz & Sons LLC*, 2012 OK CIV APP 59, ¶ 9, 278 P.3d 1060, 1061 (Div. IV) ("Claimant's petition for review was commenced August 30, 2011, after the August 26, 2011, effective date of 85 O.S.2011 § 340, which sets out the standard of review in an action for review commenced after its effective date.") *with Franklin Elec. Sales, Inc., and Franklin Elec. Co., Inc. v. Tina Lanette Aaron and The Workers' Comp. Court*, Case No. 108,539 (Sept. 2, 2011) (Div. IV) (unpublished) (applying the law in effect on the date of claimant's injury, presumably because the petition in error in that case was filed before the effective date of the 2011 amendment).