2013 OK CIV APP 112

**Jose C. RAMOS, Petitioner,**

v.

**BECCO CONTRACTORS, INC., Becco Contractors, Inc. (Own Risk # 19301), and The Workers' Compensation Court, Respondents.**

No. 111367.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 21, 2013.

Stan K. Bearden, Tulsa, Oklahoma, for Petitioner.

R. Jay McAtee, McAtee Law Office, Tulsa, Oklahoma, for Respondents.

LARRY JOPLIN, Chief Judge.

¶1 Petitioner Jose C. Ramos (Claimant) seeks review of the trial court's order refusing to enforce a provision of the joint petition settlement by and between Claimant and Respondents Becco Contractors, Inc. and Becco Contractors, Inc. (Own Risk # 19301) (collectively, Employer). In this review proceeding, Claimant asserts the trial court erred in refusing to enforce the joint petition settlement in its entirety.

¶2 The basic facts are not seriously disputed. Claimant does not speak English. On or about December 15, 2004, Claimant suffered a serious accidental injury to his right foot arising out of and in the course of his employment by Employer. Claimant filed his Form 3, including a nine-digit number in the blank for his Social Security number. Employer admitted occurrence of a compensable injury, and paid benefits for temporary total disability and medical treatment.

¶3 Claimant sought benefits for permanent total disability. On consideration of the evidence, the trial court awarded benefits for permanent partial disability, disfigurement, continuing medical treatment and vocational rehabilitation, and reserved the determination of permanent total disability pending the outcome of vocational rehabilitation.

¶4 The parties subsequently submitted to mediation in an attempt to finally resolve the claim. The parties agreed to settle the claim in consideration of Employer's payment to Claimant of $125,000.00, and:

[I]n addition, the [Employer] agrees to fund [a] [Medicare Set Aside] in the amount of $12,361.18. In the event the [Medicare Set Aside] as approved by [the Centers for Medicare and Medicaid Services, hereinafter CMS] exceeds this amount, the Claimant agrees to provide additional funding from the settlement proceeds.

¶ 5 At the hearing to approve the Joint Petition, Claimant acknowledged that he understood the terms and conditions for payment of the Medicare Set Aside:

Q. You are settling your case today for the sum of $125,000.00, plus $12,361.18. And you're also closing out your right to any combined injury claim that you might assert. Do you understand?

A. (Through the interpreter) Yes.

Q. You are going to agree that the $12,361.18 is to be used for what we call a Medicaid set-aside trust. Do you understand?

A. (Through the interpreter) Yes.

Q. You also are agreeing that when this Medicaid set-aside trust is submitted to CMS, that if they require additional money to be invested in the MSA, that you will provide that additional money from your part of the settlement. Do you understand that?

A. (Through the interpreter) Yes.

Q. That Medicaid set-aside trust is going to be administered by you. Do you understand?

A. (Through the interpreter) Yes.

Q. So for every dollar you spend after today on medical treatment related to this injury, you will be using those funds. Do you understand?

A. (Through the interpreter) Yes.

Q. And you will have to do the accounting to show CMS you spent the money for that purpose. Do you understand that?

A. (Through the interpreter) Yes.

Q. All medical bills that were incurred before today are the responsibility of your former employer. Do you understand?

A. (Through the interpreter) Yes.

Q. So if you get a bill that was incurred before today, I want you to forward that to your attorney, and he will forward it to my client for payment. You understand?

A. (Through the interpreter) Yes.

Q. Any medical treatment that you have after today will be paid by you, and you have to use this MSA money to pay for that service. Do you understand?

A. (Through the interpreter) Yes.

Q. Now, you will get the $12,361.18 upon CMS approving the Medicaid set-aside trust. Do you understand?

A. (Through the interpreter) Yes.

Q. So my client hasn't written that check yet, and they're going to do that as soon as we get approval on this settlement. You understand?

A. (Through the interpreter) Yes.

Q. So if you have medical bills between now and approval of the CMS, or MSA, you'll have to pay for that out of the money you're getting in this settlement. Keep your receipts. Then you can pay yourself back from the twelve thousand. You understand?

A. (Through the interpreter) Yes.

Q. Okay. Because if you need medical tomorrow, you're not going to have the money in hand from the MSA. You understand?

A. (Through the interpreter) Yes.

Based on this testimony, and Claimant's expressed understanding of the parties' rights and obligations, the trial court approved settlement by Joint Petition filed June 1, 2009. Claimant became a naturalized citizen on December 18, 2011.

¶ 6 Employer paid Claimant the principal amount of $125,000.00, but refused to fund the Medicare Set Aside or pay the stipulated amount to Claimant. Employer asserted that upon submission of the Medicare Set Aside provision to CMS, it was discovered that Claimant was not Medicare eligible, that the number reported by Claimant as his Social Security number for purposes of this Workers' Compensation claim was only a taxpayer identification number, and that Claimant's taxpayer identification number did not become his Social Security number, and

Claimant was not Medicare eligible, until he became a naturalized citizen in December 2011. Employer consequently argued that, because Claimant misrepresented his status as a holder of a valid Social Security number, eligible for Medicare benefits, at the time he filed his claim and at the time of settlement, the provision of the Joint Petition settlement calling for funding of a Medicare Set Aside was unenforceable on account of Claimant's misrepresentation of Social Security and Medicare eligibility.

¶ 7 Claimant responded. Claimant pointed out he did not speak English. Claimant further asserted he did not appreciate the difference between the nine-digit number issued to him as a taxpayer identification number and the same nine-digit number which became his Social Security number upon his naturalization, or the significance of the difference as it related to his Medicare eligibility, either at the time he filed his claim or at the time of settlement. Claimant argued alternatively that he settled his claim for the total sum of $137,361.18, and, regardless of the designation of the $12,361.18 as a Medicare Set Aside, he was nevertheless entitled to payment of the full settlement amount.

¶ 8 On consideration of the arguments of the parties' attorneys, but apparently without consideration of any testimony or evidence, the trial court held the Medicare Set Aside provision of the Joint Petition was unenforceable:

> THAT on MAY 28, 2009, the parties entered into a Joint Petition Settlement including an MSA set-a-side of $12,361.18. At the time of the settlement, the [C]laimant provided incorrect social security number and was in fact an illegal immigrant who was ineligible for medicare. This represents a material misrepresentation of fact by claimant. The [Employer] is relieved of any requirement to fund an MSA or pay the equivalent in cash to the [C]laimant. The Court renders the MSA portion of the Joint Petition, void and unenforceable.

Claimant appeals.

¶ 9 Claimant first argues that, given his lack of sophistication and education, he did not appreciate the significance or difference between his nine-digit taxpayer identification number, which later became his Social Security number, and the requirements for Medicare eligibility, so that, at best, and at the time he commenced or settled his claim, the parties were mistaken concerning Claimant's eligibility for Medicare, and there is absolutely no evidence of his intentional misrepresentation of his Medicare eligibility. In this respect, Claimant asserts he simply thought and understood he would receive the additional $12,361.18 to pay medical bills. Claimant secondly argues, again, that he settled his claim for the gross amount of $137,361.18, and that, regardless of the designation of the $12,361.18 as a Medicare Set Aside, he is nevertheless entitled to its payment.

¶ 10 Generally speaking, under the Social Security Act, where a person who is or may be eligible for Medicare benefits suffers an injury, and the person is covered by workers' compensation, Medicare is only secondarily liable for the payment of medical treatment for the workers' compensation injury until workers' compensation benefits are exhausted, including the proceeds of a settlement of a workers' compensation claim. *See*, 42 U.S.C. § 1395y(b)(2). Federal law requires the reporting of workers' compensation claims by Medicare eligible persons. *See*, 42 U.S.C. § 1395y(b)(8).

¶ 11 Reports of workers' compensation claims are submitted to the Center for Medicare and Medicaid Services (CMS). "Workers' Compensation Medicare Set–Aside Arrangement (WCMSA) Reference Guide," COBR–M03–2013–v1.3 (March 29, 2013).[1] CMS serves as or assigns a coordinator of benefits between the workers' compensation plan and Medicare, and will verify a claimant's Medicare eligibility on request. *Id.*

¶ 12 To this end, "[a] WCMSA allocates a portion of the [workers' compensation] settlement for all future work-injury-related medical expenses that are covered and otherwise reimbursable by Medicare," COBR–M03–2013–v1.3, § 3.0. Although the submission of

---

1. Available on-line at www.cms.gov.

a WCMSA is not required, "[w]hen a proposed WCMSA amount is submitted to CMS for review and the individual or beneficiary obtains CMS' approval, the CMS-approved WCMSA amount must be appropriately exhausted before Medicare will begin to pay for care related to the beneficiary's settlement, judgment, award, or other payment." *Id.* That is to say:

> [W]hen the beneficiary gets a [workers' compensation] settlement, judgment, award, or other payment[,] Medicare is required by statute (42 U.S.C. 1395y(b)) to seek reimbursement for conditional payments related to the settlement. Further, Medicare is prohibited from making payment where payment has been made (that is, where the beneficiary obtains a settlement, judgment, award, or other payment). Medicare remains the secondary payer until the settlement proceeds are appropriately exhausted. In many situations, the parties to a [workers' compensation] settlement choose to pursue a CMS-approved WCMSA amount in order to establish certainty with respect to the amount that must be appropriately exhausted before Medicare begins to pay for care related to the [workers' compensation] settlement, judgment, award, or other payment.

*Id.*

■ The law in effect at the time of the injury controls all subsequent proceedings. *Williams Companies, Inc. v. Dunkelgod,* 2012 OK 96, ¶¶ 9–10, 295 P.3d 1107, 1110. At the time of the parties' settlement, Oklahoma law held:

> Any time after the expiration of the first three days of disability on the part of the injured employee, a claim for compensation may be presented to the Administrator [of the Workers' Compensation Court.] If the employer and the injured employee shall reach a final agreement as to the facts with relation to an injury, and the resulting disability for which compensation is claimed under the Workers' Compensation Act, a memorandum of such agreement, in form as prescribed by the Administrator, signed by both the employer and employee shall be filed by the employer with the Administrator. In cases in which the claimant is not represented by legal counsel, the claimant and employer may reach a compromise settlement of all issues. The settlement must be approved by the Administrator or a judge of the Court after the filing of an Employer's First Notice of Injury and may be paid in lump sum. There shall be no requirement for the filing of an Employee's First Notice of Accidental Injury and Claim for Compensation in order to effect such settlement. The Court shall promulgate rules to allow the creation of a file, the making of a record before a reporter of the Workers' Compensation Court, and approval of the settlement. This procedure shall be known as a "compromise settlement." Compensation received by a claimant in a compromise settlement as defined by this section or in a settlement based upon a dismissal of a claim with prejudice shall not be considered an award of permanent partial disability. *In the absence of fraud, this agreement shall be deemed binding upon the parties thereto.* The Court shall have full power and authority to determine all questions in relation to payment of claims for compensation under the provisions of the Workers' Compensation Act. The Court shall make or cause to be made such investigation as it deems necessary, and upon application of either party shall order a hearing, and as soon as practicable, after the claim for compensation is submitted under this section, or such hearing closed, shall make or deny an award determining the claim for compensation, and file the same in the office of the Administrator, together with the statement of its conclusion of fact and rulings of law. Upon a hearing pursuant to this section either party may present evidence and be represented by counsel. The decision of the Court shall be final as to all questions of fact, and except as provided in Section 3.6 of this title, as to all questions of law.

85 O.S. Supp.2005 § 26(B).[2] (Emphasis added.)

---

**2.** *Now see,* 85 O.S.2011 § 339(C) ("In the absence of fraud, a Compromise Settlement shall

be deemed binding upon the parties thereto and a final adjudication of all rights pursuant to the

¶ 13 Under the law in effect at the time of Claimant's injury, we are bound to affirm factual determinations of the Workers' Compensation Court if supported by any competent evidence. *Dunkelgod*, 2012 OK 96, ¶¶ 9–10, 295 P.3d at 1110–1111. We are likewise bound to affirm the judgment below if correct under any theory. *Alimenta, U.S.A. v. Sawyers*, 1982 OK CIV APP 41, ¶ 9, 654 P.2d 660, 662.

¶ 14 In the present case, the parties settled the case based upon what appears to be, at best, a mutual misapprehension of Claimant's eligibility for Medicare benefits. However, at the hearing on approval of the Joint Petition, Claimant acknowledged his understanding that (1) the Medicare Set Aside provision would be submitted to CMS for approval, and (2) he would not receive the payment of the Medicare Set Aside funds unless or until CMS approved.

Workers' Compensation Code. An official record shall be made by a court reporter of the testimony taken to effect the Compromise Settlement.")

¶ 15 In this respect, there is no genuine dispute that Employer refused to pay the agreed amount of the Medicare Set Aside upon discovery from CMS that Claimant was not Medicare eligible. Because Claimant agreed the Medicare Set Aside would not be paid without CMS' approval, and CMS' approval of the Medicare Set Aside provision was not obtained, Claimant may not now complain of Employer's failure to pay the Medicare Set Aside. We find competent evidence to support the trial court's judgment.

¶ 16 The order of the trial court is SUSTAINED.

BUETTNER, P.J., and BELL, J., concur.